Vincent J. PINETTE; Donnie A. Carr;
Knights of the Ku Klux Klan,
Plaintiffs–Appellees,

v.

CAPITOL SQUARE REVIEW AND ADVI-
SORY BOARD; Ronald T. Keller; Dan-
iel Shellenbarger; Richard H. Finan,
Defendants–Appellants.

No. 93–4367.

United States Court of Appeals,
Sixth Circuit.

Argued June 21, 1994.

Decided July 25, 1994.

Benson A. Wolman (argued and briefed), David Goldberger, Moots, Cope & Stanton, Columbus, OH, for plaintiffs-appellees.

Andrew S. Bergman, Office of Atty. Gen., Andrew I. Sutter, Asst. Atty. Gen., Richard A. Cordray (argued and briefed), Office of Atty. Gen., Columbus, OH, for defendants-appellants.

Before: JONES and RYAN, Circuit Judges; and KRUPANSKY, Senior Circuit Judge.

RYAN, Circuit Judge.

Does a private organization's display of a religious symbol in a public forum violate the Establishment Clause? We answered "No" in *Americans United for Separation of Church & State v. Grand Rapids*, 980 F.2d 1538 (6th Cir.1992) (*en banc*), provided that there is equal access to the public forum and the display itself is truly private. Yet some doubt lingers, at least in the mind of the defendants in this case, as to when private religious speech violates the Establishment Clause.

The Capitol Square Review and Advisory Board appeals the district court's injunction ordering the board to grant Vincent J. Pinette and the Knights of the Ku Klux Klan, Ohio Realm, a permit to erect a wooden cross in Capitol Square, a public square in front of the state capitol building in Columbus, Ohio. Because Capitol Square is a public forum and the Klan's display of a Latin cross is private speech, a reasonable observer could not perceive the display at issue to be a government endorsement of religion. Therefore, we hold that the display does not violate the Establishment Clause and we affirm.

## I.

Capitol Square is a ten-acre public square located in downtown Columbus, Ohio, and is owned by the State of Ohio. Ohio's state capitol building, the Statehouse, is located in Capitol Square along with other governmental office buildings. For more than a century, countless public gatherings and cultural festivals have been held in the square. During the holiday season, the square has been decorated with lights, a Christmas tree, and, in recent years, a menorah. The Capitol Square Review and Advisory Board, by virtue of Ohio Rev.Code Ann. § 123.02.2, has the sole authority to regulate the various uses of the square.

On November 18, 1993, the board voted to ban unattended displays from the square during December 1993. The board, however, reversed its decision within a week following public outcry. A Christmas tree went up, and on November 29, 1993, the board granted a permit to erect a menorah on the square during the eight days of Chanukah. On that same day, November 29, Donnie A. Carr, the Columbus unit coordinator for the Ku Klux Klan, Ohio Realm, applied for a permit to erect a cross on the square from December 8 through December 24, 1993. On December 3, Ronald Keller, the executive director of the board, denied the Klan's application for a permit, stating in a letter that his decision "was made upon the advice of counsel, in a good faith attempt to comply with the Ohio and United States Constitutions, as they have been interpreted in relevant decisions by the Federal and State Courts." On December 9, the Klan appealed Keller's decision; an administrative hearing was held and the hearing officer issued a report and recommendation advising that the Klan's application for a permit be denied. The board subsequently adopted that recommendation. On December 17, the Klan, through Vincent Pinette, its chief executive officer, Ohio Realm, sought an injunction in federal dis-

trict court requiring the board to issue the permit. The district court held a hearing on December 20, and on December 21, the district court granted the Klan's request for an injunction and ordered the board to issue the permit. The district court concluded that Capitol Square was a traditional public forum and the cross the Klan proposed to erect was protected speech. The district court reasoned that because a private party (not the government) sought to display a religious symbol in a public forum, a reasonable observer would not perceive the display to be an endorsement of religion and thus the Establishment Clause was not implicated.

After the district court issued the injunction, the board immediately moved for a stay pending appeal, which the district court denied. On December 21, the board appealed to this court and moved for an emergency stay pending the appeal, which we denied on December 22, 1993. The board then filed an emergency application for a stay of injunction with Supreme Court Associate Justice John Paul Stevens, our circuit justice, which he denied on December 23, 1993. — U.S. ——, 114 S.Ct. 626, 126 L.Ed.2d 636 (Stevens, Circuit Justice 1993). Meanwhile, the Klan erected the cross on Capitol Square on the evening of December 21; the cross remained there for at least a day until it was vandalized.

## II.

■ Our jurisdiction, of course, depends upon the existence of an actual case or controversy. *SEC v. Medical Comm. for Human Rights*, 404 U.S. 403, 406, 92 S.Ct. 577, 579, 30 L.Ed.2d 560 (1972); *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937); *see also* U.S. Const. art. III, § 2. At the outset, we acknowledge that events subsequent to our hearing oral argument in this appeal have rendered this case moot: the injunction at issue has already expired and the cross no longer stands in Capitol Square. *Cf. Neighbors Organized to Insure a Sound Env't, Inc. v. McArtor*, 878 F.2d 174, 178 (6th Cir.1989). However, in a case in which an injury is inherently of such short duration as to make judicial review largely impossible, and the

injury is likely to recur, we do not dismiss the case for mootness. *Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d 350 (1975). We think it likely that the Klan or some other organization will, in the future, seek access to Capitol Square, and there is every reason to believe that any future action involving the same parties and issues will take at least as long to wind its way through the legal system as this case has. *See Rosen v. Brown*, 970 F.2d 169, 173 (6th Cir.1992). Thus, we are satisfied that we may properly exercise jurisdiction over this case under the exception to the mootness doctrine for wrongs capable of repetition yet evading review.

■ Ordinarily we review a district court's grant or denial of an injunction for an abuse of discretion, *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir.1992), but here the district court combined the hearing on the injunction with a trial on the merits under Fed.R.Civ.P. 65(a)(2). Accordingly, we review the district court's findings of fact for clear error under Fed.R.Civ.P. 52 and its conclusions of law *de novo*.

■ The United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech...." U.S. Const. amend. I. The Religion Clauses of the First Amendment apply to the states via the Fourteenth Amendment. *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081–82, 31 L.Ed.2d 263 (1972); *Everson v. Board of Educ.*, 330 U.S. 1, 5, 67 S.Ct. 504, 506, 91 L.Ed. 711 (1947). Private religious speech is protected under the Free Speech and Free Exercise Clauses. *Heffron v. International Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 647, 101 S.Ct. 2559, 2563–64, 69 L.Ed.2d 298 (1981). Without a compelling interest, the government may not discriminate against private speech in a public forum on account of the speaker's views. *See, e.g., Carey v. Brown*, 447 U.S. 455, 461–62, 100 S.Ct. 2286, 2290–91, 65 L.Ed.2d 263 (1980); *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 96, 92 S.Ct. 2286, 2290, 33 L.Ed.2d 212 (1972); *Niemotko v. Maryland*, 340 U.S. 268, 271–72, 71 S.Ct. 325, 327–28, 95 L.Ed. 267

(1951). Speakers with a religious message are entitled no less access to public forums than that afforded speakers whose message is secular or otherwise nonreligious. *See, e.g., Lamb's Chapel v. Center Moriches Union Free Sch. Dist.,* —— U.S. ——, ——, 113 S.Ct. 2141, 2148, 124 L.Ed.2d 352 (1993); *Board of Educ. of Westside Community Sch. v. Mergens,* 496 U.S. 226, 248–49, 110 S.Ct. 2356, 2371, 110 L.Ed.2d 191 (1990); *Widmar v. Vincent,* 454 U.S. 263, 267 n. 5, 274–75, 102 S.Ct. 269, 273 n. 5, 277, 70 L.Ed.2d 440 (1981); *Niemotko,* 340 U.S. at 271–72, 71 S.Ct. at 327; *Americans United,* 980 F.2d at 1553; *Doe v. Small,* 964 F.2d 611, 629 (7th Cir.1992) (Easterbrook, J., concurring). Finally, we must keep in mind that "there is a crucial difference between *government* speech endorsing religion, which the Establishment Clause forbids, and *private* speech endorsing religion, which the Free Speech and Free Exercise Clauses protect." *Mergens,* 496 U.S. at 250, 110 S.Ct. at 2372.

 Capitol Square is, indeed, a traditional public forum. Over the years, groups as divergent as the Ku Klux Klan and the United Way have held rallies and sponsored speeches in the square. During the holiday season, a menorah and a Christmas tree have been displayed on the square.

In places which by long tradition or by government fiat have been devoted to assembly and debate, the rights of the State to limit expressive activity are sharply circumscribed. At one end of the spectrum are streets and parks which "have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Hague v. CIO,* 307 U.S. 496, 515 [59 S.Ct. 954, 964, 83 L.Ed. 1423] (1939). In these quintessential public forums, the government may not prohibit all communicative activity. For the State to enforce a content-based exclusion it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end. *Carey* [, 447 U.S. at 461, 100 S.Ct. at 2290].

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45, 103 S.Ct. 948, 954–55, 74 L.Ed.2d 794 (1983) (parallel citations omitted). As the Supreme Court observed in *International Soc'y for Krishna Consciousness, Inc. v. Lee,* —— U.S. ——, ——, 112 S.Ct. 2701, 2705, 120 L.Ed.2d 541 (1992), "regulation of speech on government property that has traditionally been available for public expression is subject to the highest scrutiny." The Klan is entitled to the full protection of the public forum doctrine, even though it seeks to erect a cross rather than sponsor a speech. The Constitution protects any conduct that may be "sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments." *Spence v. Washington,* 418 U.S. 405, 409, 94 S.Ct. 2727, 2730, 41 L.Ed.2d 842 (1974) *(per curiam ).*

The district court held that the Klan's plan to erect a cross in the square did not violate the Establishment Clause because a reasonable observer would not construe the display, sponsored by a private party and accompanied by a sign disclaiming governmental sponsorship, as an endorsement of religion. The defendants argue that the district court erred because (1) a cross is a powerfully religious symbol that cannot be "sanitized" through the ameliorating secular gloss associated with the Christmas holiday; and (2) the location of this distinctly religious display in front of the Ohio Statehouse and on Capitol Square would lead a reasonable observer to conclude that the State of Ohio endorsed Christianity. Until today, we had not thought that there would be any circumstances under which it could seriously be argued that the United States Constitution requires that religious speech be "sanitized."

 For a government display of a religious symbol to pass constitutional muster, the display must: 1) have a secular purpose; 2) neither advance nor inhibit religion in its principal or primary effect; and 3) "not foster 'an excessive entanglement with religion.' " *Lemon v. Kurtzman,* 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971) (quoting *Walz v. Tax Comm'n,* 397 U.S. 664, 674, 90 S.Ct. 1409, 1414, 25 L.Ed.2d 697 (1970)). The *Lemon* test has subse-

quently been refined to ask whether a reasonable observer would view the disputed display as a government endorsement of religion. *See Lynch v. Donnelly,* 465 U.S. 668, 687–94, 104 S.Ct. 1355, 1366–70, 79 L.Ed.2d 604 (1984) (O'Connor, J., concurring); *see also County of Allegheny v. ACLU,* 492 U.S. 573, 593, 109 S.Ct. 3086, 3100–01, 106 L.Ed.2d 472 (1989). Of course, the display at issue here is not a government sponsored display; it is, in fact, privately funded and privately maintained, and carries an express disclaimer of any government support.

We have held that a private organization's unattended display of a religious symbol in a public forum does not violate the Establishment Clause. *Americans United,* 980 F.2d at 1553. In *Americans United,* we considered the constitutionality of a menorah displayed in a public square in Grand Rapids, Michigan. We acknowledged in that case that several aspects of the display arguably intimated government endorsement of religion: the display was undoubtedly religious; it stood in close proximity to official governmental buildings; and the display did not contain secular symbols. But we held that:

> [T]wo crucial facts make this case very different from many holiday display cases: [the] display is privately sponsored, and it stands in a traditional public forum to which all citizens have equal access. Although these facts are not automatically determinative, recent precedent indicates that they should carry much more weight than the details of the display emphasized by the plaintiffs.

*Id.* at 1545.

To silence a speaker in a public forum, the state must have a compelling interest, *Perry,* 460 U.S. at 45, 103 S.Ct. at 954–55, 74 L.Ed.2d 794; defendants claim the compelling interest here is not violating the Establishment Clause. A reasonable observer, defendants argue, would conclude that Ohio endorsed Christianity after viewing a cross standing in front of the Statehouse in Capitol Square. The defendants concede that the Klan's cross is private speech but they fear that some uninformed observer will come upon Capitol Square, and, on seeing the cross in front of the Statehouse, will draw the opposite conclusion—despite the fact that the cross carries a disclaimer of any government support.

The freedoms guaranteed by the Constitution cannot depend upon the fanciful perceptions of some hypothetical dolt. The obvious analogy is to the problem of the "Heckler's Veto" so eloquently discussed by Professor Kalven. Harry Kalven Jr., *The Negro and the First Amendment* 140–60 (1965). As we observed in *Americans United:*

> We believe that the plaintiffs' argument presents a new threat to religious speech in the concept of the "Ignoramus's Veto." The Ignoramus's Veto lies in the hands of those determined to see an endorsement of religion, even though a reasonable person, and any minimally informed person, knows that no endorsement is intended, or conveyed, by adherence to the traditional public forum doctrine.

980 F.2d at 1553. Similarly, Judge Easterbrook has written: "If hecklers cannot silence political speech in a public forum, obtuse observers cannot silence religious speech in a public forum." *Small,* 964 F.2d at 630 (Easterbrook, J., concurring). In short, the Establishment Clause forbids only religious speech sponsored by the government, so "truly *private* religious expression in a truly *public* forum cannot be seen as endorsement by a reasonable observer." *Americans United,* 980 F.2d at 1553.

Defendants argue that this is one of those rare cases, analogous to *County of Allegheny,* 492 U.S. 573, 109 S.Ct. 3086, where private religious speech can violate the Establishment Clause. In *County of Allegheny,* however, the religious display—a privately sponsored holiday creche—was placed on a ceremonial staircase inside the Allegheny County Courthouse. In enjoining the display, the Court noted that the "Grand Staircase" was not the "kind of location in which all were free to place their displays for weeks at a time." *Id.* at 600 n. 50, 109 S.Ct. at 3104 n. 50. Clearly, the staircase was not a public forum. By allowing the display to be placed in a privileged location, the county endorsed it. In contrast, Capitol Square in Columbus is open to anyone, and there is no indication that Ohio treated the Klan or its display favorably.

Defendants also rely on three cases from the Seventh Circuit for the proposition that private religious speech can violate the Establishment Clause. In *ACLU v. St. Charles,* 794 F.2d 265 (7th Cir.), *cert. denied,* 479 U.S. 961, 107 S.Ct. 458, 93 L.Ed.2d 403 (1986), the Seventh Circuit enjoined the display of a lighted cross on a public building, a firehouse. The case is easily distinguished: the side of a public building, like a ceremonial staircase in a county courthouse, is not a public forum. By affording the religious speaker such an exclusive location from which to announce his message, the government "endorsed" or impermissibly supported a particular religious message. In *Gonzales v. North Township of Lake County,* 4 F.3d 1412 (7th Cir.1993), the Seventh Circuit enjoined a permanent display of a crucifix in a public park. In that case, however, the crucifix was part of a war memorial that was donated to the township by the Knights of Columbus, *id.* at 1421, so the display in effect became governmental religious speech. Finally, defendants point to language in *Small,* 964 F.2d at 619:

> Moreover, the mere presence of religious symbols in a public forum does not violate the Establishment Clause, since the government is not presumed to endorse every speaker that it fails to censor in a quintessential public forum far removed from the seat of government.

Defendants make much of the "far removed from the seat of government" language—indeed, too much. The undisputed holding of *Small* is that private religious speech in a public forum does not violate the Establishment Clause. *Id.* The fact that the park which was home to the disputed display in *Small* was "far removed from the seat of government" was little more than a gratuitous observation offered to bolster the court's conclusion that the park was, in fact, a true public forum unlike the ceremonial staircase in *County of Allegheny* and the side of the firehouse in *St. Charles.*

▇▇▇ Religious groups may not be selectively denied access to public forums in the name of the Establishment Clause; the Free Speech and Free Exercise Clauses prohibit this. *Lamb's Chapel,* — U.S. at — –

——, 113 S.Ct. at 2147–48; *Mergens,* 496 U.S. at 248–49, 110 S.Ct. at 2370–71; *Widmar,* 454 U.S. at 274–75, 102 S.Ct. at 277. The potency of religious speech is not a constitutional infirmity; the most fervently devotional and blatantly sectarian speech is protected when it is private speech in a public forum. Zealots have First Amendment rights too. Some speech may be distasteful, unpopular, and outright offensive, but as Justice Thurgood Marshall so persuasively wrote, the protection found in the First Amendment does not depend upon popular opinion:

> Necessarily, then, under the Equal Protection Clause, not to mention the First Amendment itself, government may not grant the use of a forum to people whose views it finds acceptable, but deny use to those wishing to express less favored or more controversial views. And it may not select which issues are worth discussing or debating in public facilities. There is an "equality of status in the field of ideas," and government must afford all points of view an equal opportunity to be heard. Once a forum is opened up to assembly or speaking by some groups, government may not prohibit others from assembling or speaking on the basis of what they intend to say. Selective exclusions from a public forum may not be based on content alone, and may not be justified by reference to content alone.

*Mosley,* 408 U.S. at 96, 92 S.Ct. at 2290 (footnote omitted). The constitutional command of governmental neutrality and evenhandedness in regulating the public forum is no less binding in the case of private religious speech. In a public forum, the religious content of private speech is absolutely irrelevant for First Amendment purposes.

### III.

Accordingly, we **AFFIRM.**