CHRISTOPHER B., Plaintiff,

v.

Marion S. BARRY, Jr., Defendant.

Civ. A. No. 88–114 SSH.

United States District Court,
District of Columbia.

June 30, 1989.

John J. Connally, Information, Protection & Advocacy Center for Handicapped Individuals, Inc. Washington, D.C., for plaintiff.

Kathleen A. Carey, Asst. Corp. Counsel, Washington, D.C., for defendant.

**MEMORANDUM OPINION**

STANLEY S. HARRIS, District Judge.

This matter is before the Court on defendant's motion to dismiss the complaint in the above-captioned action. For the reasons set forth below, that motion is granted.

*Background*

The facts in this case are simple and unfortunate. Plaintiff, age 15 at the time this action was filed, has been committed since September 1978 to the District of Columbia's care as a neglected child pursuant to D.C.Code § 16–2301. In August 1979, the District placed plaintiff in foster care. In June 1987, plaintiff was placed at Saint Elizabeths Hospital, where he currently resides. This placement was necessitated by a series of unfortunate events that disrupted plaintiff's previously stable foster home situation. According to the complaint, the foster care provider had filed for adoption of plaintiff. In late 1984, however, the son of plaintiff's foster care provider, who also lived in the foster home, murdered his wife and then killed himself.

This tragedy had a profound effect on the foster family, including plaintiff. In March and April 1987, plaintiff ran away from the foster home on three separate occasions. During one of these absences, plaintiff was the victim of homosexual rape. In March 1987, the foster care provider withdrew her application to adopt Christopher. In June 1987, the Residential Placement Unit of the Department of Human Services was engaged to identify a new residential placement for Christopher, who ran away on June 8, 1987.

A Superior Court custody order was issued on June 11, 1987. Four days later, Christopher was admitted voluntarily to Saint Elizabeths for a prehearing evaluation in accordance with D.C.Code § 16–2315. On July 2, 1987, plaintiff's commitment was continued and modified for placement of Christopher at an out-of-state residential treatment facility. One week later, Saint Elizabeths notified the Superior Court that Christopher had tested positive for the human immunodeficiency virus (HIV), associated with acquired immune deficiency syndrome (AIDS).[1] On July 22, 1987, the Superior Court ordered an additional stay at Saint Elizabeths of twenty-one days. The Superior Court also ordered the District "to diligently continue the search for an alternative placement through every available channel and resource." On August 11, 1987, the Superior Court further ordered the District to work out an interim placement for Christopher within two weeks or discharge him from Saint Elizabeths by August 25, 1987. Despite numerous Superior Court hearings and reports to the Superior Court since August 1987, Christopher was finally placed with a foster care provider in February 1988, after this suit was initiated.[2]

Plaintiff, through his guardian *ad litem*, brought this action asserting violations of his constitutional rights under the Fifth Amendment and 42 U.S.C. § 1983, as well as his rights under the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the District of Columbia Human Rights Act of 1977, D.C. Code § 1–2501 *et seq.* Plaintiff alleges that he is being unlawfully discriminated against as a handicapped person—that is, his being seropositive for the HIV virus. Plaintiff alleges that based on his handicap, he has been treated differently than other similarly situated nonhandicapped individuals with respect to residential care and placement. He seeks declaratory relief and monetary damages. Defendant moves to dismiss on the grounds of abstention, failure to state a claim, and defendant's absolute or qualified immunity.

---

1. At the time this complaint was filed, Christopher was asymptomatically seropositive for the HIV virus, but had not been diagnosed as having either AIDS or a related condition, Aids-related complex. The Court does not know if Christopher's status in this respect has changed.

2. That provider—Health, Education and Environmental Concepts—was suggested by plaintiff's counsel.

*Discussion*

Defendant argues that this Court should abstain from hearing plaintiff's claims, based on the principles first enunciated by the Supreme Court in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The *Younger* decision held that "courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law." *Id.* at 43, 91 S.Ct. at 750. Nevertheless, the Court's rationale was not limited to the narrow issue of pending state criminal proceedings. It was drawn from

> the notion of "comity," that is, a proper respect for state functions.... What the concept [of comity] does represent is a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.

*Id.* at 44, 91 S.Ct. at 750. It is this underlying concern that requires the application of *Younger* abstention whenever "the State's interests in the proceeding are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government." *Pennzoil v. Texaco, Inc.,* 481 U.S. 1, 107 S.Ct. 1519, 1526, 95 L.Ed.2d 1 (1987).

An earlier case, *Middlesex County Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982), which held *Younger* abstention appropriate in the context of a federal injunction against a pending state bar disciplinary action, sets forth a three-part test on federal interference in state civil proceedings.

> The question in this case is threefold: *first,* do state bar disciplinary hearings within the constitutionally prescribed jurisdiction of the State Supreme Court constitute an ongoing state judicial proceeding; *second,* do the proceedings implicate important state interests; and *third,* is

there an adequate opportunity in the state proceedings to raise constitutional challenges.

*Id.* at 431–32, 102 S.Ct. at 2520–2521 (emphasis in the original). Answering each of those questions in the affirmative, the Court held that the district court's decision to abstain was proper. *See id.* at 432, 102 S.Ct. at 2521.

In framing those same issues for the facts of this case, the Court must ask: (1) whether the District of Columbia neglect proceedings constitute an ongoing judicial proceeding; (2) whether that proceeding involves important state interests; and (3) whether the parallel proceeding affords an adequate opportunity to raise federal constitutional issues. The first two questions are easily answered in the affirmative. The ability to raise the issues sued on in this court in the neglect proceedings is thus the focus of analysis.

At the outset, it is must be remembered that "the burden rests on the federal plaintiff to show 'that state procedural law barred presentation of [its] claims.'" *Pennzoil,* 107 S.Ct. at 1528, *quoting Moore v. Sims,* 442 U.S. 415, 432, 99 S.Ct. 2371, 2381, 60 L.Ed.2d 994 (1979). In both *Pennzoil* and *Middlesex,* the federal plaintiff's failure to first try state procedures was viewed harshly by the Court. *See id.* ("[D]enigrations of the procedural protections afforded by Texas law hardly come from Texaco with good grace, as it apparently made no effort under Texas law to secure the relief sought in this case."); *Middlesex,* 457 U.S. at 436, 102 S.Ct. at 2523 (noting that plaintiff "failed even to *attempt* to raise any federal constitutional challenge in the state proceedings").

Although plaintiff in this action raised some constitutional issues in a brief filed with the District of Columbia court in January 1988, those claims were not resolved. *See* Plaintiff's Opposition at 6. "The securing of a foster care placement in the neglect proceedings would no doubt discourage the neglect court from deciding any of plaintiff's present claims just as, in effect, it had mooted from consideration plaintiff's *Motion for Immediate Placment.*" *Id.*

In other words, the motion raising those issues became moot before it was acted upon; nothing in the record indicates that the court refused to entertain plaintiff's constitutional arguments or would refuse to do so if they were properly before the court. Furthermore, although plaintiff contends that the neglect court "has neither the rules nor the procedures necessary to properly adjudicate plaintiff's claims," *id.* at 5, he has not met his burden on this point. The Family Division numbers among its powers "the authority to (i) order any public agency of the District of Columbia to provide any service the Division determines is needed and which is within the agency's legal authority...." D.C.Code § 16–2320. Given this broad mandate, it is inappropriate for a federal court to conclude that the Superior Court "would have been any less inclined than a federal court to address and decide the federal constitutional claims" or that District of Columbia "law and procedures [are] so deficient that *Younger* abstention is inappropriate." *Pennzoil,* 107 S.Ct. at 1529. Accordingly, defendant's motion to dismiss must be granted.