47 F.3d 845
 Adeline HOOVER, Janice L. Peters, and Jack M. Roper,
Plaintiffs-Appellants,
v.
Jeffrey WAGNER, Judge in and for the Circuit Court of
Milwaukee County Branch 38, and Philip Arreola,
Chief of Police, City of Milwaukee,
Defendants-Appellees.
 No. 94-1699.
 United States Court of Appeals,
Seventh Circuit.
 Argued Nov. 10, 1994.
Decided Feb. 2, 1995.
Rehearing and Suggestion for Rehearing En Banc Denied March 6, 1995.
 
 Michael Bertling, Carroll, Parroni & Postlewaite, Eau Claire, WI, Frederick Herbert Nelson, Mathew D. Staver (argued), Staver & Associates, Orlando, FL, Joseph H. Helm, Jr., David E. Wells, McLario & Helm, Menomonee Falls, WI, for Adeline Hoover, Janice L. Peters, Jack M. Roper.
 Peter C. Anderson, Asst. Atty. Gen. (argued), Wisconsin Dept. of Justice, Madison, WI, Rudolph M. Konrad, Office of City Atty., Milwaukee, WI, for Jeffrey Wagner.
 Rudolph M. Konrad, Office of City Atty., Milwaukee, WI, for Philip Arreola.
 Before POSNER, Chief Judge, and COFFIN* and BAUER, Circuit Judges.
 POSNER, Chief Judge.
 
 
 1
 This is a suit for declaratory and injunctive relief against a Milwaukee state judge and the city's chief of police. It is brought under 42 U.S.C. Sec. 1983 and charges infringement of the right to free speech conferred by the First Amendment. The plaintiffs are two anti-abortion demonstrators plus a journalist who reports on anti-abortion demonstrations and who, we infer from his having joined with the other plaintiffs in bringing the suit, is sympathetic to their position. The suit seeks a declaration that the injunction which the state judge issued in the case of State v. Missionaries to the Preborn, now pending on appeal to Wisconsin's intermediate court of appeals, is vague and overbroad and infringes the plaintiffs' freedom of speech. The suit also seeks an injunction against the enforcement of the state court injunction by the police in a manner that will deter the plaintiffs' exercise of their freedom of speech even more than the unenforced injunction would do.
 
 
 2
 The state court's injunction prohibits the named defendants "and all persons acting in concert with them and having received notice of" the injunction from trespassing on or blocking access to specified abortion clinics in Milwaukee; from congregating, demonstrating, or otherwise protesting within 25 feet of the entrances to the clinics; from photographing license plates of cars of people using the clinics; and from refusing to desist from "sidewalk counseling" at the request of the person being counseled. There are other provisions but these will suffice to indicate the injunction's character. The plaintiffs say in their complaint--truthfully, we must assume, because there is no other source of facts at this stage--that they want to protest abortions at the clinics named in the injunction (or, in the case of the journalist, to report on these protests), but without breaking the law, and that they are deterred from engaging in lawful protests by a well-grounded fear that the injunction will be interpreted as prohibiting, on pain of criminal contempt, persons such as themselves, who are not named in the injunction, from being seen talking to or even just standing near named defendants. They claim--and again we must take the claim at face value given the state of the record--that they or persons similarly situated have been threatened with arrest, arrested, and even prosecuted for violation of the injunction when the only evidence of violation was that they were seen in the vicinity of abortion clinics that were being picketed by defendants named in the injunction.
 
 
 3
 The district judge dismissed the suit, finding that the plaintiffs had no standing to sue. They had, he thought, nothing to fear from the injunction. Under Wisconsin law, a nonparty to an injunction is not considered to be acting "in concert" with a party to an injunction merely by associating with the party; the association must have the purpose and effect of assisting the party to violate the injunction. Dalton v. Meister, 84 Wis.2d 303, 267 N.W.2d 326, 330-31 (1978). (This is the usual rule, not anything peculiar to Wisconsin. See, e.g., Alemite Mfg. Corp. v. Staff, 42 F.2d 832 (2d Cir.1930) (L. Hand, J.).) Since the plaintiffs disclaim any intention to assist the named defendants to violate the injunction, they could not, the district judge concluded, be hurt by it; and without actual or threatened harm there is no standing to sue in federal court. Valley Forge Christian College v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). We pointed in United States v. Board of Education, 11 F.3d 668, 673 (7th Cir.1993), to authority that "anyone who takes steps deliberately to thwart the enforcement of a judicial decree" can be punished for contempt even though he is not acting in concert with anyone named in the decree. Even if Wisconsin has this rule (so far as we know it does not), it would not affect the judge's ground for dismissing the suit. The plaintiffs disclaim any intention of deliberately thwarting the decree on their own as vigorously as they disclaim any intention of acting in concert with the people named in the decree to thwart it.
 
 
 4
 We do not agree with the district court's ruling on standing. All that a plaintiff need show to establish standing to sue is a reasonable probability--not a certainty--of suffering tangible harm unless he obtains the relief that he is seeking in the suit. Pennell v. City of San Jose, 485 U.S. 1, 8, 108 S.Ct. 849, 855-56, 99 L.Ed.2d 1 (1988); Village of Elk Grove Village v. Evans, 997 F.2d 328, 329 (7th Cir.1993); North Shore Gas Co. v. EPA, 930 F.2d 1239, 1242 (7th Cir.1991); City of St. Louis v. Department of Transportation, 936 F.2d 1528, 1532 (8th Cir.1991). Arrest, prosecution, and conviction are tangible harms, and so is abandoning one's constitutional right of free speech in order to avert those harms. Therefore the question on which standing turns in this case is the probability that unless the plaintiffs obtain a declaration or injunction limiting the enforcement of the Wisconsin state court's injunction, they will either forgo their right of free speech or be arrested, prosecuted, and perhaps even convicted. We cannot reckon the probability of these consequences as being low. The two abortion protesters in the trio of plaintiffs have made clear that they want to go right up to the line that separates legal from illegal protest. If that line is drawn in vague and wavering fashion by the state court injunction, or if the Milwaukee police and other law enforcement officers interpret the injunction in a way that subjects to arrest people who stop just short of the line, then either these plaintiffs will be arrested if they insist on going right up to the line, or they will draw well back from the line and as a result (since it is quite possible that the injunction goes as far as it could go without violating the First Amendment) forgo the full exercise of their constitutional rights. Cf. Virginia v. American Booksellers Ass'n, 484 U.S. 383, 392-93, 108 S.Ct. 636, 642-43, 98 L.Ed.2d 782 (1988). The journalist plaintiff fears, again not unreasonably, that the police will not accept his bona fides as a journalist but will treat him (perhaps realistically) as just another abortion protester. These features were missing from O'Shea v. Littleton, 414 U.S. 488, 490-99, 94 S.Ct. 669, 673-78, 38 L.Ed.2d 674 (1974), an otherwise similar suit in which the Court expressed doubt that the plaintiffs had standing, without quite holding that they did not.
 
 
 5
 Perhaps anticipating our conclusion that all three plaintiffs have standing to sue, the defendants have tendered two alternative grounds upon which to uphold the dismissal of the suit. The first is the Younger doctrine, and the second the Rooker- Feldman doctrine. Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The core of the Younger doctrine is the proposition that a person who is being prosecuted by a state for violating its laws is not allowed to derail the prosecution by bringing a suit in federal court to enjoin the prosecution on the ground that the state statute on which it is based is unconstitutional. His remedy is to plead the unconstitutionality of the statute as a defense in the state court proceeding. The doctrine is inapplicable here because none of the plaintiffs is being prosecuted for anything. They fear eventual prosecution if they continue with their protest activities, but no prosecution has been instituted.
 
 
 6
 Nor is there any indication that they have as yet committed a colorable violation of the state court injunction for which they may be prosecuted. In such a case Younger, as interpreted in such cases as Hicks v. Miranda, 422 U.S. 332, 349, 95 S.Ct. 2281, 2292, 45 L.Ed.2d 223 (1975); Illinois v. General Electric Co., 683 F.2d 206, 212 (7th Cir.1982), and Alleghany Corp. v. Haase, 896 F.2d 1046, 1050 (7th Cir.1990), vacated as moot under the name Dillon v. Alleghany Corp., 499 U.S. 933, 111 S.Ct. 1383, 113 L.Ed.2d 441 (1991), might require the federal court to stay its hand long enough to allow the state a reasonable time to decide whether to prosecute the plaintiff and by doing so place itself in a position where it can invoke Younger. This is not such a case. The plaintiffs do not now have and may never have an opportunity to make their constitutional arguments by way of defense to a prosecution or other proceeding brought by the state against them, unless they violate the injunction, and they are not required to do that in order to get a determination of its constitutionality. Wooley v. Maynard, 430 U.S. 705, 710, 97 S.Ct. 1428, 1433, 51 L.Ed.2d 752 (1977).
 
 
 7
 No problem, respond the defendants; the plaintiffs should have intervened in the state court injunction proceeding and then they could have gotten the adjudication they want, in the state courts. Of course if they had tried to intervene in that proceeding they might have been met by a ruling, similar to the district judge's in our case, that they had no standing. Or might not; it would depend on Wisconsin's rules of standing. We don't have to get into that. There is no duty to intervene to stave off the use of a case as res judicata against one. Martin v. Wilks, 490 U.S. 755, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989). That is, having an option to intervene doesn't bind you as a party would be bound by the judgment in the suit in which you could have intervened. Granted, that is not the issue in this case; but the principle that there is no duty to intervene may reach further. Certainly nothing in Younger or the cases following it suggests that persons claiming a violation of their federal rights have an obligation before turning to federal court to see whether there is some state court proceeding that they might join in order to present their federal claims there. Bickham v. Lashof, 620 F.2d 1238, 1243-45 (7th Cir.1980). A limited duty of exhaustion of state judicial remedies is created by the doctrine of Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). See, e.g., Tavarez v. O'Malley, 826 F.2d 671 (7th Cir.1987). But that is not a duty to intervene, and it has no application to a challenge to a statute or ordinance; we are about to see that the state court injunction can be regarded in that light.
 
 
 8
 So the Younger doctrine does not apply to this case, and let us turn to Rooker- Feldman. That doctrine teaches that the Supreme Court of the United States is the only federal court that has jurisdiction to review the decision of a state court, with some irrelevant exceptions such as federal habeas corpus for state prisoners. The application of the doctrine to interlocutory decisions of state courts (remember that an appeal is pending from the state court's injunction in Missionaries to the Preborn ) is an open question. Owens-Corning Fiberglas Corp. v. Moran, 959 F.2d 634, 635 (7th Cir.1992). But just as in Owens-Corning, it is one we can duck.
 
 
 9
 The defendants argue that the plaintiffs are trying to get us to reverse or at least modify the state court injunction, and that a decision which grants relief in the form of an injunction is no different, for purposes of the Rooker- Feldman doctrine, from any other decision or judgment. Port Authority Police Benevolent Ass'n v. Port Authority of N.Y. & N.J. Police Dept., 973 F.2d 169, 177-78 (3d Cir.1992); cf. Ritter v. Ross, 992 F.2d 750 (7th Cir.1993). But the plaintiffs are not parties to the state court action, so it is a little hard to describe what they are doing as circumventing the prescribed mode of appellate review. Their rights have not been adjudicated; and ordinarily that would bar the defendants' invocation of Rooker-Feldman. Valenti v. Mitchell, 962 F.2d 288, 297-98 (3d Cir.1992).
 
 
 10
 The plaintiffs make a further argument against the application of the Rooker- Feldman doctrine in this case. It is that the injunction is in effect a statute or ordinance, which regulates their behavior in a fashion they claim to be unconstitutional and should be treated accordingly--that is, as a statute or ordinance rather than as a judgment. This reclassification would if accepted free them from the clutches of Rooker- Feldman. There is some merit to the approach. Injunctions often do function quite like statutes. Henson v. East Lincoln Township, 814 F.2d 410, 416 (7th Cir.1987); see also Philadelphia Co. v. SEC, 175 F.2d 808, 817 (D.C.Cir.1948), vacated as moot, 337 U.S. 901, 69 S.Ct. 1047, 93 L.Ed. 1715 (1949). The federal courts, moreover, have no concern with the separation of powers within states, Sweezy v. New Hampshire, 354 U.S. 234, 255, 77 S.Ct. 1203, 1214, 1 L.Ed.2d 1311 (1957); Markham v. Clark, 978 F.2d 993 (7th Cir.1992), so that even if a state decided to entrust a "court" with explicit legislative powers, the statutes that the court issued would be no more but also no less subject to challenge in federal court under the federal Constitution than statutes produced in the orthodox way. New Orleans Public Service, Inc. v. Council of City of New Orleans, 491 U.S. 350, 370-72, 109 S.Ct. 2506, 2519-20, 105 L.Ed.2d 298 (1989); District of Columbia Court of Appeals v. Feldman, supra, 460 U.S. at 476-77, 103 S.Ct. at 1311-12; Roudebush v. Hartke, 405 U.S. 15, 20-22, 92 S.Ct. 804, 808-09, 31 L.Ed.2d 1 (1972); Guarino v. Larsen, 11 F.3d 1151, 1153 (3d Cir.1993). A state could not, in other words, defeat such suits by transferring legislative power to its courts and then crying "Rooker- Feldman."
 
 
 11
 So the Eleventh Circuit held in Cheffer v. McGregor, 6 F.3d 705 (11th Cir.1993), a case much like the present, in which the court said that "the injunction [limiting abortion protests] has all the attributes of a criminal statute and we will treat it accordingly." Id. at 708. The Supreme Court later reviewed the state court's injunction directly, on certiorari to the state's highest court, and came to somewhat different conclusions from the Eleventh Circuit concerning the constitutionality of the injunction. Madsen v. Women's Health Center, Inc., --- U.S. ----, 114 S.Ct. 2516, 129 L.Ed.2d 593 (1994). But the Supreme Court did not take issue with (in fact did not discuss) the Eleventh Circuit's treating the injunction as a statute or mention the Rooker- Feldman doctrine.
 
 
 12
 We need not pursue the interesting question of the propriety of classifying injunctions as statutes for purposes of the doctrine, or endorse the reasoning in Cheffer (a decision since vacated by the court sitting en banc and remanded to the district court for reconsideration in light of Madsen, see 41 F.3d 1421-23 (11th Cir.1994) (en banc) (per curiam)); it is enough to flag the issue for future reference. Here as in Owens-Corning, difficult issues concerning the scope of the Rooker- Feldman doctrine may with propriety be side-stepped because a principle that informs yet is more basic than Younger persuades us that the district judge was right to dismiss the suit. The plaintiffs are seeking equitable relief. The declaration they seek is a declaration that the state cannot engage in certain conduct, and such a declaration is the equivalent of an injunction. Samuels v. Mackell, 401 U.S. 66, 72-73, 91 S.Ct. 764, 767-68, 27 L.Ed.2d 688 (1971); see also California v. Grace Brethren Church, 457 U.S. 393, 408, 102 S.Ct. 2498, 2507-08, 73 L.Ed.2d 93 (1982); American Federation of State, County & Municipal Employees v. Tristano, 898 F.2d 1302, 1304 (7th Cir.1990). The black-letter rule, which might seem decisive against so unusual an injunction as sought here, is that there is no "right" to an injunction, that an injunction is an extraordinary remedy rather than a remedy available as a matter of course. These are two points rather than one, and both are questionable unless carefully qualified. There is no "right" to an injunction, it is true, but only in the rather unhelpful sense that an injunction may be issued only in a case or class of cases where damages are deemed an inadequate remedy. Walgreen Co. v. Sara Creek Property Co., 966 F.2d 273, 274 (7th Cir.1992). In this unhelpful sense, too, an injunction might be thought "extraordinary" relief because damages are the ordinary relief. But it is not extraordinary in the sense of being discretionary. Declaratory relief is discretionary in a strong sense, Green v. Mansour, 474 U.S. 64, 72, 106 S.Ct. 423, 427-28, 88 L.Ed.2d 371 (1985); Allendale Mutual Ins. Co. v. Bull Data Systems, Inc., 10 F.3d 425, 431 (7th Cir.1993); Tempco Electric Heater Corp. v. Omega Engineering, Inc., 819 F.2d 746, 747 (7th Cir.1987), but that is probably because it is often used to seize the forum from the "natural" plaintiff, see id. at 749-50, as when a copyright infringer brings suit to declare the copyright invalid or an insurance company brings suit for a declaration that its policy does not cover the insured. That is not what happened here; and anyway the plaintiffs are seeking an outright injunction as well as a declaration.
 
 
 13
 The modern law of equity is a system of rules administered by regular judges rather than a compendium of moral principles administered by ecclesiastical officials, as the Lord Chancellors of England, who invented English equity jurisprudence, originally were. In specific classes of case, injunctions now issue pretty much as a matter of course. Walgreen Co. v. Sara Creek Property Co., supra, 966 F.2d at 278; Shondel v. McDermott, 775 F.2d 859, 867-68 (7th Cir.1985); Roland Machinery Co. v. Dresser Industries, 749 F.2d 380, 389 (7th Cir.1984). But traces of the ancient practice survive. Equitable remedies are powerful, and with power comes responsibility for its careful exercise. These remedies can affect nonparties to the litigation in which they are sought; and when, as in this case, they are sought to be applied to officials of one sovereign by the courts of another, they can impair comity, the mutual respect of sovereigns--a legitimate interest even of such constrained sovereigns as the states and the federal government. Los Angeles v. Lyons, 461 U.S. 95, 112, 103 S.Ct. 1660, 1670-71, 75 L.Ed.2d 675 (1983); Younger v. Harris, supra, 401 U.S. at 44, 91 S.Ct. at 750-51; Allendale Mutual Ins. Co. v. Bull Data Systems, Inc., supra, 10 F.3d at 431-33; W.C.M. Window Co. v. Bernardi, 730 F.2d 486, 490 (7th Cir.1984). If injunctions no longer are discretionary, still there is not an absolute right to an injunction in a case in which it would impair or affront the sovereign powers or dignity of a state or a foreign nation. Owens-Corning Fiberglas Corp. v. Moran, supra; Lynk v. LaPorte Superior Court No. 2, 789 F.2d 554, 559-60 (7th Cir.1986). It is in cases such as these that one is apt in modern law to hear injunctions described as an "extraordinary" form of relief. See, e.g., id. at 559; W.C.M. Window Co. v. Bernardi, supra, 730 F.2d at 490. Cases such as Lynk and Bernardi interpret Younger as an application of equity principles in situations of overlapping sovereigns, and those principles provide an independent basis for withholding the injunction in this case.
 
 
 14
 The plaintiffs seek equitable remedies against a state judge and the chief of police of a major city. They want the federal court to tell the state judge to rewrite his injunction to make it clearer, to refrain from convicting anybody who does not really and truly violate the injunction as revised, and to tell the police chief and the judge not to infer that people are assisting in violating the injunction from their mere proximity to defendants named in the injunction. The relief that the plaintiffs seek is at once an insult to the judicial and law enforcement officials of Wisconsin, an interference with an ongoing state court proceeding, and an empty but potentially mischievous command to these officials to avoid committing any errors in the enforcement of the injunction--and if a plaintiff were erroneously convicted for violating the state court injunction, would that put the prosecutor, the judge, and, if there were a jury, the jury in contempt of the federal injunction?
 
 
 15
 This extraordinary relief is sought on the basis of a handful of examples in which Milwaukee police officers may have overenforced the injunction. The alleged instances of overenforcement are not tied in any coherent way to the wording of the injunction, since the words "in concert" have been given a precise and legally unexceptionable meaning, as Judge Reynolds correctly noted, by Wisconsin case law. The plaintiffs' able counsel, when pressed at oral argument, was unable to suggest a useful amendment to the injunction and acknowledged that what he really wants from the federal courts is a firm warning to Wisconsin officialdom that they are not to trample on his clients' constitutional rights. In so characterizing the aim of the suit he came perilously close to acknowledging that what he is seeking is an advisory opinion, which federal courts have no power to issue. United States National Bank v. Independent Ins. Agents of America, Inc., --- U.S. ----, ----, 113 S.Ct. 2173, 2178, 124 L.Ed.2d 402 (1993); Illinois ex rel. Barra v. Archer Daniels Midland Co., 704 F.2d 935, 941 (7th Cir.1983). But even if he spoke in haste and actually is seeking a form of order that is within the power of a federal court to issue, the difficulty of framing a useful injunction, when considered in conjunction with the affront to comity that such an injunction would constitute and the nebulous and speculative character of the fears that have led the plaintiffs to sue, convinces us that this suit is an inappropriate invocation of the equity powers of the federal courts. In so concluding, we do not invade the prerogatives of the district court to find facts and exercise discretion in matters of remedy. Taking as true the facts pleaded by the plaintiffs, we hold that it would be an abuse of discretion, in light of the principles of equity and comity that underlie Younger, to grant the relief sought by the plaintiffs. Should the plaintiffs ever be arrested or otherwise impeded or punished for the exercise of their right of free speech, they will have an abundance of state and federal remedies to which to appeal. See, e.g., Madsen v. Women's Health Center, Inc., supra; Collins v. Womancare, 878 F.2d 1145 (9th Cir.1989); Machesky v. Bizzell, 414 F.2d 283, 290-91 (5th Cir.1969).
 
 
 16
 Except for pointing out that declaratory relief is discretionary in a way that injunctive relief is not, we have thus far treated the request for relief against the state judge interchangeably with the request for relief against the police. But there is another difference between these requests besides the form of the relief sought. When cases speak of enjoining other judicial proceedings, they almost always mean enjoining the parties to the proceeding from going forward with active litigation of the proceeding. They do not mean placing the judge in that proceeding under an injunction. Formally there was no power at common law to enjoin a judge, but there was a device called a "writ of prohibition" by which a court could in effect enjoin the judge of another court. Pulliam v. Allen, 466 U.S. 522, 529-36, 104 S.Ct. 1970, 1974-78, 80 L.Ed.2d 565 (1984), held that such relief may be sought against a state judge in a suit under 42 U.S.C. Sec. 1983. But the Court made clear that the power was to be reserved for "really extraordinary causes," id. at 538, 104 S.Ct. at 1979, citing with approval (id. at 539 n. 20, 104 S.Ct. at 1979 n. 20) O'Shea v. Littleton, supra. O'Shea was a case broadly similar to ours (except, as we have already noted, for the absence of First Amendment claims)--the plaintiffs were complaining of violations of their civil rights by state judicial officers and seeking injunctive relief. Citing Younger, the Court held that injunctive relief should not issue, because it would be "intrusive and unworkable." 414 U.S. at 500, 94 S.Ct. at 678. The Court also noted the unseemliness of creating a situation in which state judges might be subjected to proceedings in federal district court for criminal contempt. Id. at 502, 94 S.Ct. at 679. O'Shea is strong support for affirming the rejection of the relief sought by our plaintiffs against the state court judge.
 
 
 17
 In urging affirmance on grounds different from the district court's, the defendants in this case hewed closely to Younger and Rooker- Feldman. They did not make the broader equitable argument that has persuaded us that the judge was right to dismiss the suit. But when matters of comity are involved, the ordinary doctrines of waiver give way, as in Younger itself. 401 U.S. at 41, 91 S.Ct. at 749; United States v. Caputo, 978 F.2d 972, 976 (7th Cir.1992); Thomas v. Indiana, 910 F.2d 1413, 1415 (7th Cir.1990). It is true, to attach a qualification to the qualification, that if state officials want to remain in federal court, perhaps to obtain a swift adjudication, the federal court is allowed, though not required, to honor their desire. Ohio Bureau of Employment Services v. Hodory, 431 U.S. 471, 480, 97 S.Ct. 1898, 1904, 52 L.Ed.2d 513 (1977); Sequoia Books, Inc. v. McDonald, 725 F.2d 1091, 1095 (7th Cir.1984). Obviously these state officials do not want to remain in federal court. Ohio Civil Rights Comm'n v. Dayton Christian Schools, 477 U.S. 619, 626, 106 S.Ct. 2718, 2722, 91 L.Ed.2d 512 (1986). They have pleaded lack of standing, Younger, and Rooker- Feldman in order to get out.
 
 
 18
 The judgment dismissing the suit is affirmed, but on the ground not of lack of standing but of want of equity.
 
 
 19
 MODIFIED AND AFFIRMED.
 
 
 
 *
 Hon. Frank M. Coffin of the First Circuit