T.W. and M.W., or T.W., a minor, and M.W., a minor, by and through their next friend Scott Enk, Plaintiffs,

v.

Thomas A. BROPHY, individually and as Director of the Milwaukee County Human Services Department, Edward J. Konkol, Clifford O'Connor, Clarence Johnson, Sharon Schultz, Carolyn Lee, Jim Ries, Adrienne Seider, Bonnie Finkler, Joan O'Keefe, Mary Carias, Catholic Social Services of the Archdiocese of Milwaukee, Inc., Pat Wendt, Judge Mel Flanagan, The Legal Aid Society of Milwaukee, Inc., Roselyn Clipps, Michael Vruno, Gwen Eggson, The Children's Hospital of Wisconsin, Carolyn Lenyard, Virginia Wright, The National Association of Black Social Workers, The Wisconsin Association of Black Social Workers, and The Institute for Child and Family Development, Defendants.

Civil Action No. 96–C–0120.

United States District Court, E.D. Wisconsin.

Aug. 20, 1996.

**1308**

Kathleen Mitchell, Mitchell Law Office, Louisville, KY, for T.W., M.W.

John F. Jorgensen, Milwaukee County Corporation Counsel, Milwaukee, WI, for Thomas Brophy, Edward J. Konkol, Clifford O'Connor, Clarence Johnson, Sharon Schultz, Carolyn Lee, Jim Ries, Adrienne Seider, Bonnie Finkler, Joan O'Keefe, Mary Carias.

Stephen W. Hayes, Timothy W. Feeley, von Briesen, Purtell & Roper, Milwaukee, WI, for Catholic Social Services of the Archdiocese of Milwaukee Inc., Pat Wendt.

Richard Victor, Asst. Atty. General, Wisconsin Department of Justice, Office of the Attorney General, Madison, WI, for Mel Flanagan.

Maria K. Myers, Harold A. Laufer, Louis F. Raymond, Davis & Kuelthau, Milwaukee, WI, for Legal Aid Society of Milwaukee, Inc.

Maria K. Myers, Davis & Kuelthau, Milwaukee, WI, for Michael Vruno.

Peter D. Alberg, Wayne Van Ert, Otjen, Van Ert, Stangle, Lieb & Weir, Milwaukee, WI, for Children's Hospital of Wisconsin, Inc., Carolyn Lenyard, Virginia Wright.

Harvey J. Goldstein, Goldstein Law Office, Milwaukee, WI, for Institute for Child and Family Development.

### DECISION AND ORDER

REYNOLDS, Senior District Judge.

Justice is more than making the right decisions; it is the right court making the right decision. Although concepts like capacity to sue, standing, personal jurisdiction, and subject matter jurisdiction may appear to be arcane legal rules, they ensure that the court has authority to resolve the dispute. Before the court can reach the merits of any suit, before discovery can begin, the court must resolve standing and jurisdictional issues. Despite the serious allegations and the publicity in this case, this court like any other must focus on whether Scott Enk has capacity to sue as the next friend of the minor plaintiffs and whether this court has jurisdiction over the suit at all. Because Scott Enk has failed to establish his capacity to sue as a next friend and because the plaintiffs' attorney has offered no suitable next friend, the court dismisses this case. Even if Scott Enk were a suitable next friend, however, the court would lack subject matter jurisdiction over the conspiracy to place the minors with their aunt because a federal district court may neither disrupt an ongoing state court proceeding nor act as an appellate court to a state trial court.

### BACKGROUND AND ALLEGATIONS

In this suit, virtually all of the defendants have challenged Enk's capacity to bring this suit as the next friend to T.W. and M.W. *See* Fed.R.Civ.P. 17(c). In addition, most of the defendants argue that this court lacks subject matter jurisdiction. *See* Fed. R.Civ.P. 12(b)(1). Various defendants have raised other reasons for dismissal which the court will not reach. When a party moves to dismiss a complaint, the court tests the sufficiency of the complaint by assuming all the allegations are true and by drawing all reasonable inferences in favor of the plaintiffs. *Powe v. City of Chicago*, 664 F.2d 639, 642 (7th Cir.1981). To resolve jurisdictional issues, the court can consider facts outside the pleadings. *Capitol Leasing Co. v. Federal Deposit Insurance Corporation*, 999 F.2d 188, 191 (7th Cir.1993).

For these motions, the court can summarize the complaint. The story begins over six years ago. On February 10, 1990, the Milwaukee County Human Services Department ("the Department") placed T.W. and M.W. in separate foster care families. (Am.Compl. ¶ 28.) Almost immediately, M.W.'s foster parents ("the foster parents") offered to provide a permanent placement for both M.W.

and T.W. Because the foster parents were white and M.W. and T.W. were black, the Department opposed this solution; the Department has a policy of racial matching in foster care placement. (*Id.* ¶ 31.)

All the defendants participated in a conspiracy to place T.W. and M.W. with a black family, and racial matching trumped the best interests of the children as the defendants' primary goal. (*Id.* ¶ 1.) For example, Bonnie Finkler ("Finkler"), a case worker for the Department, placed T.W. with a black foster care family in June 1990, despite that family's failure to meet the state's minimum standards to receive a foster care license. (*Id.* ¶¶ 34, 30.) Two months later, the Milwaukee Circuit Court transferred T.W. to M.W.'s foster parents (*Id.* ¶ 35.)

In November 1992, the Department decided that returning the children to their natural mother was impossible and asked the foster parents to adopt the children. Finkler opposed this result and enlisted Rosalyn Clipps ("Clipps"), the local representative of the National Association of Black Social Workers ("NABSW"), to prevent this result. (*Id.* ¶ 39.) The conspirators turned to the aunt as the best possibility for a racial match. Although the aunt originally consented to the adoption, she changed her mind in February 1993.

The conspirators supported placement with the aunt despite knowing that T.W. had been sexually abused on at least two occasions while visiting the aunt. (*Id.* ¶ 38.) The conspirators covered up the abuse by refusing to investigate. (*Id.* ¶¶ 43 and 45). Similarly, the minors' guardian ad litem, Michael Vruno, did not inform the court that the children preferred living with their foster parents over their aunt. (*Id.* 53). On November 18, 1994, Judge Mel Flanagan held a permanency plan review hearing. Clipps attended as a representative of NABSW. Marjorie Wendt, an attorney (not to be confused with Pat Wendt, a defendant), tried to appear on behalf of the children. Judge Flanagan ordered Wendt to leave and later filed a complaint with the Wisconsin Bar

against Wendt. (*Id.*). Judge Flanagan ordered unsupervised visits with the aunt. (*Id.*)

In May 1995, Judge Flanagan order placement with the aunt, despite knowing about the abuse. (*Id.* ¶ 56.) The foster parents appealed, but the state appellate court upheld Judge Flanagan's placement. Since the change in placement, the children's day care provider has made two reports about possible physical abuse, but the Department refused to investigate. (*Id.* ¶ 60).

On January 31, 1996, Scott Enk filed this suit on behalf of the children. The complaint alleges five federal claims as well as one state law claim. The plaintiffs asked for damages, injunctions, and declaratory relief.

## CAPACITY

■ Because T.W. and M.W. are minors, a guardian ad litem or a next friend must bring this suit on their behalf. Fed. R.Civ.P. 17(c). While a guardian ad litem is appointed by the court and, in Wisconsin, must be a lawyer, neither of those restrictions apply to a next friend. Not anyone, however, may serve as a next friend. A next friend must meet three criteria: the next friend must (1) provide an adequate explanation as to why the real parties in interest (in this case T.W. and M.W.) cannot bring the suit themselves, (2) be dedicated to minors' best interests, and (3) have some significant relationship with the minors. *Whitmore v. Arkansas*, 495 U.S. 149, 163–64, 110 S.Ct. 1717, 1727–28, 109 L.Ed.2d 135 (1989).[1] Although those criteria originated in the habeas corpus statute, they now apply to any next friend in federal court. *Id.* Moreover, Scott Enk, like any next friend, has the burden to clearly establish the propriety of his status. *Id.* Because Enk's showing that he can proceed as a next friend is like any plaintiff's burden to show standing, Enk must allege his capacity to sue as a next friend in the complaint.

■ The amended complaint has only one allegation about Scott Enk: he is a resident

---

**1.** In *Whitmore,* the court did not explicitly adopt the third element. Even if it is not a separate element, the next friend's relationship with the minors has an important impact on whether the court believes that the next friend is acting in the minors' best interests.

of Wisconsin. (Am.Compl. ¶¶ 2 and 3.) Even if the court treats this as a motion for summary judgment under Fed.R.Civ.P. 56(c) and examines the factual record, two of the three requirements are missing. To begin with, he has submitted no factual record. The defendants' submissions provide the only information about Enk. On this record, Enk can establish neither that he is dedicated to the children's best interests—as opposed to his own agenda—nor that he has a significant relationship with the children.

■ Without doubt, Enk has a strong interest in children's issues; he is the head of the Hear My Voice organization, which promotes "the right of every child to a safe, permanent family." (Hear My Voice has no involvement in the case.) (Enk Dep. at 60.) He has met the two minor children about ten times—but only after the dispute between the aunt and the foster parents began. Enk followed the foster care placement case avidly through the media, but he never attended any of the proceedings. (*Id.* at 33–34.) He wrote letters to a local publication expressing his view that foster parents should have custody of T.W. and M.W. (*Id.*) He totally disagrees with Judge Flanagan's decision to place the minors with the aunt and has written that Judge Flanagan's decision was "court-ordered child abuse." (*Id.* at 60.) Even if further psychological and home studies conclude that the leaving the children with the aunt is in their best interests, Enk would not change his views about the terrible error Judge Flanagan committed. (*Id.* at 61.) Enk has a bachelor of arts in mass communications and economics from the University of Wisconsin–Milwaukee, with an emphasis on American social history; he has no formal training in child rearing, child development, social work, psychology, or psychiatry. (*Id.* at 68–69.)

A strong commitment to an issue does not necessarily ensure that he will act in the best interests of the minors. Strong commitment leads to zealotry; zealotry leads to crusades; crusades leave unintended victims. Although courts may be the modern battleground for social and political crusades, no case can or should become a Children's Crusade[2] in which minors are unknowing, unwilling, or unwitting casualties to a zealot's devotion to ideals.

In other words, Enk may be acting in the interests of children in general, not these two children in particular. Apparently unwilling to consider different points of view, his passion for the issue could easily turn into stubbornness and his version of the ideal could cloud his judgment on what these children actually need.

Usually a significant relationship between the next friend and the minors will convince the court that the next friend's primary concern is the particular minors and their particular situation. Enk has not shown a significant relationship with T.W. or M.W. He is not related to them; he was never their foster parent; he knew them only because of the custody dispute. Although he followed the dispute avidly, he did not attend the proceedings in person, meaning the media filtered much of his information about the situation. He has met with them no more than ten times. He has no proof that they have asked him to bring this suit on their behalf. *See Child v. Beame*, 412 F.Supp. 593, 599 (S.D.N.Y.1976). Whether the court looks only at the complaint or the factual record, Enk has not established that he has a significant relationship with the children which will ensure that he acts in their best interests.

■ Enk's attorneys have offered to serve as the minors' next friend if the court rejects Enk. They have no more established their status as next friend than Enk has, nor has anyone else offered to serve as the minors' next friend. Without an adequate next friend, the court dismisses the case.

**2.** Beginning with Pope Urban's II's speech at the Council of Clermont on November 18, 1095, the church and other leaders in Europe advocated a holy war to free Jerusalem and the surrounding areas from Muslim control. 16 Encyclopedia Britannica 1329–35 (15th ed. 1991). In 1212, caught in the mass hysteria, thousands of children tried to succeed where the largest armies of Christian Europe had failed. These children-soldiers were killed, died of disease, or were sold into slavery. *Id.* at 1335.

## JURISDICTION

██ The relationship between state court and federal courts is complex, triggering issues of comity and sovereignty. All sorts of doctrines limit what power federal courts have over state court. The *Rooker-Feldman* doctrine prohibits federal district courts from reviewing the merits of state court decisions. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). Similarly, the *Younger* doctrine prevents courts, except in extraordinary circumstances, from intervening in ongoing state proceedings. *Compare Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) *with Pulliam v. Allen*, 466 U.S. 522, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1983).

The complaint alleges three legal theories: (1) all the defendants conspired to race-match in placing T.W. and M.W. with their aunt; (2) the County has a policy of race-matching in foster care placements; and (3) the County did not protect T.W. from being abused. Because the relief requested would require drastic intervention in a state court proceeding, this court cannot take jurisdiction over the placement of the children.

██ Under *Rooker-Feldman*, this court is powerless to review Judge Flanagan's placement decision, but *Rooker-Feldman* applies to more than the claims actually raised in state court. A district court lacks jurisdiction if the issues in the federal case are inextricable from the state court judgment. *Wright v. Tackett*, 39 F.3d 155, 157 (7th Cir.1994) (*per curiam*) *cert. denied* —— U.S. ——, 115 S.Ct. 1100, 130 L.Ed.2d 1067 (1995).

An issue in a federal case is inextricable from a state judgment if that issue would be a basis for a state appellate court to reverse the state trial court. For example, a party moves to intervene in a state foreclosure action, which is denied. The party then brings a civil rights action in federal court, claiming that the state trial judge violated the party's constitutional rights by denying intervention (as a part of a conspiracy to deprive the party of its property). *Wright,*

39 F.3d at 157. *Rooker-Feldman* barred the action. *Id.* 157–58. If denying intervention was unconstitutional and if the party would have raised it in the state appellate court, the appellate court would have reversed and allowed the party to intervene; therefore, the issues in the federal case were inextricable from the state court case. Although the party sought damages in the federal case, the federal court could not rule in the party's favor without implicitly reversing the state trial court.

██ Here, Judge Flanagan decided to place the children with their aunt. The foster parents appealed the decision, and the appellate court affirmed Judge Flanagan. Now, the plaintiffs allege that Judge Flanagan and the other defendants conspired together and, as part of that conspiracy, improperly considered race in the placement of T.W. and M.W. Such a conspiracy would nullify the placement decision. If such a conspiracy existed and if the issue was raised before the Wisconsin Appellate Court, that court would have at least vacated and remanded to a different judge. If this case were to proceed and if the plaintiffs were to prove that the conspiracy existed, the judgement in this case would implicitly nullify the state court's placement decision. Under *Rooker-Feldman*, this court lacks jurisdiction over the conspiracy allegations.

██ The plaintiffs rely on *Pulliam v. Allen*, 466 U.S. 522, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1983), to justify jurisdiction. Although *Pulliam* allows a federal court to enjoin a state court judge in certain circumstances, it applies only for prospective relief not retroactive relief. *See Navajo Nation v. District Court for Utah Cty.*, 624 F.Supp. 130, 137 (D.Utah 1985) *aff'd* 831 F.2d 929. Because the plaintiffs argue there is no ongoing proceeding, *Pulliam* is inapplicable.

██ The plaintiffs could argue that *Rooker-Feldman* is inapplicable because the conspiracy continues (although it is difficult to tell what the plaintiffs' position is because of the cursory briefs they have submitted on these issues). If the state court proceeding is ongoing, however, a federal court must,

except in extraordinary circumstances, abstain from any decision within the scope of the state court proceedings. *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Younger applies if (1) the state proceeding is ongoing when the complaint is filed, (2) the state proceeding implicates an important state interest, and (3) the state proceeding provides an adequate opportunity to raise constitutional challenges. *Trust & Investment Advisers, Inc. v. Hogsett,* 43 F.3d 290, 294 (7th Cir.1994).

█ A conspiracy to place the children based on their race implicates whether the children should remain with their aunt and is within the scope of the state court proceeding that reviews T.W. and M.W.'s placement. The plaintiffs only raise one argument against the *Younger* doctrine: there is no ongoing state proceeding. At the same time, the plaintiffs have also asked this court to issue a temporary restraining order that requires Judge Flanagan to allow the children to have counsel of their choosing. If there was no ongoing proceeding, the plaintiffs would not need the temporary restraining order. More importantly, as children in need of protection, the state court has jurisdiction over the children and their placement. Wis.Stat. § 48.13. Every six months, the state court reviews the placement. Wis.Stat. § 48.38(5). The placement of the children was an ongoing and continuing proceeding when the plaintiffs filed this suit.

Although cryptic, the plaintiffs' argument may be that there is no ongoing proceeding because Judge Flanagan will not allow the children counsel of their choosing. In some courts, *Younger* is inapplicable if the state court has refused to allow the party to participate. *FOCUS v. Allegheny County Ct. of Common Pleas,* 75 F.3d 834 (3rd Cir.1996). There a state judge in a custody dispute issued a gag order. When FOCUS attempted to intervene and have the order declared unconstitutional, the state judge denied intervention. Shut out from the state court, the plaintiffs could file an action in federal court to declare the order unconstitutional. *Id.* at 843–44.

T.W. and M.W. are, however, parties to the state case (and are represented by a guardian ad litem); Scott Enk and the plaintiffs' attorney are not parties to the state case. Whether one has counsel of one's choosing is different than whether one is a party to an ongoing proceeding. Moreover, neither Scott Enk nor the attorneys in this case have ever tried to appear in the state court proceedings. All they have even alleged is that Judge Flanagan refused to allow Marjorie Wendt (who is not an attorney in this case) to represent T.W. and M.W., but the complaint does not allege that T.W. and M.W. wanted Marjorie Wendt's representation. The failure to have counsel of one's choosing may implicate whether one can adequately raise constitutional issues in the state court, but it does not affect whether one is a party to those proceedings.

Custody of children, especially those in foster care, implicates an important state interest. *Brunken v. Lance,* 807 F.2d 1325, 1330 (7th Cir.1986). As to the ability to raise constitutional issues, the plaintiffs have not directly challenged this element. In one of the appeals, the foster parents did raise constitutional objections (although different from the ones in this case) to Judge Flanagan's placement decision. *See In the Interest of Tiffany W. and Myokra W.,* No. 95–1576, slip op. at 18–23, 1995 WL 522911 (Wis.Ct. App. Sept. 6, 1995).

In fairness to the plaintiffs, their entire case is an attack on the third element of *Younger.* In their view, no one in the state court proceedings acts in their interest. Their guardian ad litem is part of the conspiracy, so is the state court judge, and so is the County; therefore, none of them will raise these problems. In other words, the state court constitutional protection is empty promises because of the conspiracy aligned against the children.

But, the plaintiffs have failed to explain why the Wisconsin appellate court cannot correct the problems. Instead of asking this court to order Judge Flanagan to allow counsel of choice, for example, Enk could move to intervene as the plaintiffs' next friend. If Judge Flanagan denied that motion, Enk, through his attorneys, could appeal and raise the constitutional issues. If an appeal is too slow, Wisconsin provides litigants with the

extraordinary writ of mandamus. *See* Wis. Stat. § 783.01 *et seq.; See e.g., In the Interest of Tiffany W. and Myokra W.,* 192 Wis.2d 407, 532 N.W.2d 135 (Ct.App.1995).

The type of declaratory relief sought also convinces the court that it has no jurisdiction over the conspiracy to place the children with their aunt because of the aunt's race. If the court enjoined the defendants from engaging in race-matching, Judge Flanagan would hold a review hearing. She might change the placement; she might not. If she did not, the plaintiffs would have to return to this court, and this court would have to decide whether Judge Flanagan had continued to impermissibly consider race. Nor would this be an easy determination. If Judge Flanagan relied on biological factors or a shared, cultural heritage, this court would have to decide whether those were legitimate or a cover for race-matching.

■ Federal courts are not school marms to their state court cousins. A federal court should not immerse itself in the administration of state courts. *O'Shea v. Littleton,* 414 U.S. 488, 500, 94 S.Ct. 669, 678, 38 L.Ed.2d 674 (1974) and *Hoover v. Wagner,* 47 F.3d 845, 851–52 (7th Cir.1995). Courts have intervened when they can issue a simple remedy. For example, in *Pulliam v. Allen,* a state court judge was putting people in jail who could not make bail when the charged offense carried no jail time. There the federal court could resolve the issue simply by ordering the state court to stop incarcerating people who could not make bail if their charged offense carried no jail time. *Id.*

If the plaintiffs want a federal court to be intricately involved in a state court proceeding, they must allege a systemic failure in the state court system—not just a single trial judge's error. *E.g., O'Shea,* 414 U.S. at 502, 94 S.Ct. at 679. In short, if there are constitutional errors within a state court proceeding, litigants must appeal through the state's judicial system; they may not run to federal district court. The plaintiffs have not explained the problems with intervening and then appealing (or seeking mandamus); therefore, they have not shown an exception to *Younger.*

Although there remain two additional theories of liability, they apply only to Milwaukee County and the individual employees of Milwaukee County. Having a policy of racial matching or failing to protect a person in the state's custody may fall beyond both *Rooker–Feldman* and *Younger.* The Seventh Circuit has allowed plaintiffs to sue for harm caused while in foster care, apparently despite an ongoing juvenile proceeding. *See K.H. v. Morgan,* 914 F.2d 846 (7th Cir.1990) *and Camp v. Gregory,* 67 F.3d 1286 (7th Cir.1995) *cert. denied* — U.S. ——, 116 S.Ct. 2498, 135 L.Ed.2d 190 (1996). In those cases, however, the defendants never raised *Younger* or *Rooker–Feldman,* and the exact involvement of the state court is unclear. The issue is complex. *Compare LaShawn A. v. Kelly,* 990 F.2d 1319 (D.C.Cir.1993) *cert denied* 510 U.S. 1044, 114 S.Ct. 691, 126 L.Ed.2d 659 (1994) *and Thomas v. New York,* 814 F.Supp. 1139 (E.D.N.Y.1993) *with Christopher B. v. Barry,* 715 F.Supp. 1143 (D.D.C.1989) *and P. Edward v. Williams,* 696 F.Supp. 1432 (D.Utah 1988). Because it is not obvious whether the court has jurisdiction and because the county defendants have not raised these jurisdictional concerns, this court, at this point, will not rule on whether *Rooker–Feldman* or *Younger* provides an alternative basis for dismissing the Department and its employees as to the racial policy and failure to protect claims.

## CONCLUSION

The court finds that Scott Enk lacks the capacity to sue as the next friend of T.W. and M.W. and that T.W. and M.W. as minors lack the capacity to sue on their own behalf. Therefore, the court dismisses the case with prejudice.

Even if Scott Enk had the capacity to sue as a next friend, the court would dismiss Catholic Social Services of the Archdiocese of Milwaukee, Inc.; Pat Wendt; Judge Mel Flanagan; The Legal Aid Society of Milwaukee, Inc.; Rosalind Clipps; Michael Vruno; Gwen Eggson; The Children's Hospital of Wisconsin; Carolyn Lenyard; Virginia Wright; The National Association of Black Social Workers; The Wisconsin Association of Black Social Workers; and the Institute

for Child and Family Development because the court lacks subject matter jurisdiction over the claims in which they are the defendants.

The court lacks jurisdiction to consider T.W. and M.W.'s motions for emergency relief.