**Holly GOTTFRIED, Plaintiff–Appellant,**

v.

**MEDICAL PLANNING SERVICES, INC.; Offices of Manohar Lal, M.D.; Manohar Lal, M.D.; County of Summit, Ohio; Summit County Sheriff Richard Warren; and The Honorable Jane Bond, Judge of the Summit County Court of Common Pleas, Defendants–Appellees.**

No. 97–3076.

United States Court of Appeals, Sixth Circuit.

Argued March 19, 1998.

Decided April 16, 1998.

Rehearing and Suggestion for Rehearing En Banc Denies July 10, 1998.

---

Patrick J. Perotti (argued), Susan E. Rusnak (briefed), Dworken & Bernstein, Painesville, OH, for Holly Gottfried.

Robert M. Gippin (argued), Karen Grasso (briefed), Daniel M. McIntyre (briefed), Buckingham, Doolittle & Burroughs, Akron, OH, for Medical Planning Services, Inc., Manohar Offices of Manohar Lal, M.D., and Manohar Lal.

Allyson L. Miller–Leonard (argued), Christopher Carl Esker (briefed), Summit County Prosecutor'S Office, Akron, OH, for Summit County, Richard Warren, and Honorable Jane Bond.

Before: MARTIN, Chief Judge;
MERRITT and CLAY, Circuit Judges.

## OPINION

MERRITT, Circuit Judge.

Plaintiff Holly Gottfried wants to picket the home, OB/GYN office, and abortion clinic of a physician in Akron, Ohio, but a state court injunction, entered twelve years ago, restricts her right to do so. Rather than disobey the injunction and risk contempt or imprisonment, she brought the present action under 42 U.S.C. § 1983, asking the federal District Court to strike the state court's injunction as unconstitutional under the First Amendment. The District Court dismissed her case for reasons of comity and federalism. She now asks us to reverse that decision. Because we conclude Gottfried should have first asked the state court to modify its injunction in light of her constitutional claims before having the federal court adjudicate her constitutional claims, we affirm the District Court's decision to abstain with some minor procedural modifications.

### I.

The salient facts are undisputed. In 1985, Dr. Manohar Lal, his OB/GYN office, and his abortion clinic, Medical Planning Services, sued for and obtained a permanent injunction against the protest activities of certain anti-abortion organizations and two "Does." Judge James P. Winter of the Court of Common Pleas in Summit County, Ohio entered a permanent injunction on August 7, 1986. That injunction applies to the named and unnamed defendants, those acting in concert with them, and all other persons who have notice of the injunction. In pertinent part, it prohibits anyone from picketing at Dr. Lal's home and his OB/GYN office; it protects the doorways and driveways at Dr. Lal's clinic; it forbids "mass picketing or any other type of picketing ... which directly or indirectly interferes" with the business of the clinic; and it prevents more than four people from picketing on each of the sidewalks in front of and alongside the clinic. Because the parties consented to this injunction, it was not appealed.

Holly Gottfried was not a party to the state lawsuit supporting the injunction. She was only ten years old when it was entered. An anti-abortion activist, Gottfried wants to picket and distribute information at Dr. Lal's home, office, and clinic, but she fears she will be arrested if she does. On July 20, 1995, she filed this suit in federal court against Dr. Lal, his office, his clinic, the City of Akron, Akron Police Chief Larry Givens, Summit County, Summit County Sheriff Richard Warren, and Judge Jane Bond, the successor to Judge Winter on the Summit County Court of Common Pleas. Through 42 U.S.C. § 1983, Gottfried asserted violations of her constitutional rights of free speech, free press, peaceful assembly, association, free exercise of religion, due process, and equal protection under the United States and Ohio Constitutions. She asked the District Court to declare the injunction unconstitutional on its face or as applied and to enjoin the defendants from enforcing the challenged portions of the injunction against her. She also requested $200,000 in damages in addition to her costs and attorney's fees.

Dr. Lal, his office, and Medical Planning Services moved to dismiss Gottfried's complaint under the Anti–Injunction Act, *Colorado River* abstention, and the *Rooker–Feldman* doctrine. The District Court initially granted this motion without a hearing. Characterizing the case as presenting "an issue of federal-state comity that appears unique in its factual setting," the court determined that the Anti–Injunction Act, *Colorado River* abstention, and *Rooker–Feldman* did not bar Gottfried's federal suit. Nonetheless the court dismissed her case, reasoning that "if a non-party to a consent decree has standing to challenge a state court consent decree in an action brought pursuant to 42 U.S.C. § 1983, then actions in state court which are concluded by the entry of a consent decree will be of scant value and the concepts of comity between the federal and state courts will suffer." Gottfried then filed for postjudgment relief. The court reinstated her complaint and scheduled an evidentiary hearing, specifically reserving the jurisdictional issue. After the hearing, the court again dismissed the case "in the interest of state-federal comity" without ruling on the

constitutionality of the injunction. Gottfried's appeal requires us to determine whether abstention was proper under these circumstances.

## II.

Gottfried's lawsuit does not fit easily within any of the doctrines that limit federal jurisdiction. The District Court correctly found the Anti–Injunction Act does not prevent Gottfried from obtaining her desired relief. First enacted as part of the Judiciary Act of 1793, the Anti–Injunction Act is one of the oldest restrictions on the ability of federal courts to interfere with state courts. It provides, "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. But in *Mitchum v. Foster*, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972), the Supreme Court established § 1983 as an expressly authorized exception to the act. *Id.* at 242–43, 92 S.Ct. at 2161–63. Gottfried's claims are all constitutional claims brought through § 1983, and thus they fall squarely within *Mitchum*'s exception to the Anti–Injunction Act. Furthermore, the Anti–Injunction Act does not bar federal lawsuits filed by individuals who, like Gottfried, were "strangers to the state court proceedings." *County of Imperial, Cal. v. Munoz*, 449 U.S. 54, 59–60, 101 S.Ct. 289, 293, 66 L.Ed.2d 258 (1980); *Hale v. Bimco Trading Inc.*, 306 U.S. 375, 377–78, 59 S.Ct. 526, 526–27, 83 L.Ed. 771 (1939).

The District Court was also correct with respect to the abstention doctrines that restrict federal jurisdiction in cases parallel to pending state court proceedings. The abstention doctrine established by *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), requires the target of an ongoing state prosecution to raise any and all constitutional claims as defenses to that action and prevents the state court defendant from filing a collateral federal action raising the same claims. Although the concerns underlying *Younger*—equity, comity, and "Our Federalism," *id.* at 43–45, 91 S.Ct. at 750–51—apply with equal force in this case,

*Younger* abstention does not apply because Gottfried has not violated the injunction and is not the target of a pending prosecution in state court. *Steffel v. Thompson*, 415 U.S. 452, 462, 94 S.Ct. 1209, 1217, 39 L.Ed.2d 505 (1974). One could argue that the ongoing injunction is the equivalent of a pending state court action for purposes of *Younger* abstention. *See, e.g., Hayse v. Wethington*, 110 F.3d 18, 20–21 (6th Cir.1997); *Louisville Area Inter–Faith Comm. for United Farm Workers v. Nottingham Liquors, Ltd.*, 542 F.2d 652, 653–54 (6th Cir.1976). Yet that argument only holds if the federal plaintiff is a party to the state court's injunction. As with the Anti–Injunction Act and the rules of preclusion, *Younger* abstention cannot apply to one like Gottfried who is a stranger to the state proceeding. *Cf. Munoz*, 449 U.S. at 59–60, 101 S.Ct. at 292–93; *Richards v. Jefferson County, Ala.*, 517 U.S. 793, 796–800, 116 S.Ct. 1761, 1765–66, 135 L.Ed.2d 76 (1996).

The abstention doctrine established by *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), is similarly inapplicable. This doctrine is essentially a balancing test that federal courts use to decide when to abstain in civil cases out of deference to a parallel state proceeding. Five factors influence the decision: (1) which court first assumed jurisdiction over the *res* or property involved, (2) the inconvenience of the federal forum, (3) the desirability of avoiding piecemeal litigation, (4) the order of filing for the state and federal actions, and (5) the presence of a federal question. *Id.* at 818–19, 96 S.Ct. at 1246–47; *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 23, 25–26, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983). Certainly *Colorado River*'s policies of "conserv[ing] ... judicial resources" and "avoid[ing] duplicative litigation," 424 U.S. at 817, 96 S.Ct. at 1246, inform our decision in this case. But where, as here, there is no presently ongoing state proceeding parallel to the federal case, the exceptional circumstances necessary for *Colorado River* abstention do not exist. *Baskin v. Bath Township Bd. of Zoning Appeals*, 15 F.3d 569, 571–72 (6th Cir.1994).

Likewise, the District Court rightly decided that the *Rooker–Feldman* doctrine does not apply here. *Rooker–Feldman* stands for the simple (yet nonetheless confusing) proposition that lower federal courts do not have jurisdiction to review a case litigated and decided in state court; only the United States Supreme Court has jurisdiction to correct state court judgments. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476, 103 S.Ct. 1303, 1311–12, 75 L.Ed.2d 206 (1983); 28 U.S.C. § 1257. This is equally true in constitutional cases brought under § 1983, since federal courts must give "full faith and credit" to the judicial proceedings of state courts. 28 U.S.C. § 1738; *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 85, 104 S.Ct. 892, 898, 79 L.Ed.2d 56 (1984); *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 475–78, 102 S.Ct. 1883, 1894–96, 72 L.Ed.2d 262 (1982); *Allen v. McCurry*, 449 U.S. 90, 103–05, 101 S.Ct. 411, 419–21, 66 L.Ed.2d 308 (1980). These general principles are admittedly relevant to this case, but they do not directly govern. As we stated in *United States v. Owens*, 54 F.3d 271 (6th Cir.1995), "Clearly, a party cannot be said to be appealing a decision by a state court when it was not a party to the case. The *Rooker–Feldman* doctrine does not apply to bar a suit in federal court brought by a party that was not a party in the preceding action in state court." *Id.* at 274. Because Gottfried was not a party to the lawsuit underlying the state court injunction, *Rooker–Feldman* does not bar her case any more than res judicata and collateral estoppel do.

This discussion has shown that Gottfried's lawsuit does not precisely fit any of the jurisdictional doctrines normally applicable in cases like hers, even though the policies that typically restrict federal jurisdiction are present. In this case there is tension between the principles that justify abstention and the technical requirements for each of the doctrines discussed above. This tension derives from the fact that Gottfried was not a party to a state court injunction that nonetheless restricts her constitutional rights. Like the District Court, however, we are concerned about the policies underlying abstention, not its precise limitations. Therefore, we should keep in mind the Supreme Court's recent advice that "[t]he various types of abstention are not rigid pigeonholes" but instead "reflect a complex of considerations designed to soften the tensions inherent" in a dual state-federal system of justice. *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 11–12 n. 9, 107 S.Ct. 1519, 1526–27 n. 9, 95 L.Ed.2d 1 (1987). Our analysis needs to proceed a little further in light of this admonition.

### III.

A state court injunction broad enough to restrict the speech rights of those who were not parties to the underlying litigation raises as many problems of federal jurisdiction as constitutional difficulties. Such an injunction has many of the attributes of a state statute, binding all who have notice of it and subjecting those who violate its restrictions to arrest, contempt, and imprisonment. *See Cheffer v. McGregor*, 6 F.3d 705, 708 (11th Cir.1993) (treating a similar injunction like a criminal statute), *vacated* in light of the intervening decision in *Madsen v. Women's Health Center*, 512 U.S. 753, 114 S.Ct. 2516, 129 L.Ed.2d 593 (1994), 41 F.3d 1422 (11th Cir.1994) (en banc) (per curiam). Treating an injunction like a statute, those who want to exercise their speech rights but do not wish to violate the injunction often file suit in federal court against a host of state and local officials for every imaginable constitutional violation, rather than simply asking the state judge who has ongoing jurisdiction over the matter for relief. This has become the pattern in today's litigious era, and it causes a host of problems that only multiply where, as here, the law has changed in the interim and a new state judge has inherited a permanent injunction drafted by a predecessor.

Under these circumstances, we believe equity, comity, and our federalist judicial system require the federal court to give the state judge the first chance to bring the injunction into compliance with constitutional law. The policies underlying the abstention doctrine of *Railroad Commission of Texas v.*

*Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), suggest this is the correct result. *Pullman* abstention is built upon the traditional avoidance of unnecessary constitutional decisions and the sovereign respect due to state courts. *Id.* at 500–01, 61 S.Ct. at 645–46. It requires a federal court, faced with a constitutional challenge to an uncertain state law, to defer the constitutional question and avoid a direct confrontation if a decision from the state court "might avoid in whole or in part the necessity for federal constitutional adjudication, or at least materially change the nature of the problem." *Harrison v. NAACP,* 360 U.S. 167, 177, 79 S.Ct. 1025, 1030, 3 L.Ed.2d 1152 (1959); *see also Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 306, 99 S.Ct. 2301, 2312–13, 60 L.Ed.2d 895 (1979). Recognizing that permanent injunctions are similar to legislation, we should proceed with caution, cognizant that "federal courts should not adjudicate the constitutionality of state enactments fairly open to interpretation until the state courts have been afforded a reasonable opportunity to pass upon them." *Id.* at 176, 79 S.Ct. at 1030. Instead, federal courts should abstain and give the state official who is primarily responsible for the enactment the first opportunity to consider the scope of the injunction and its constitutional ramifications. After all, the state court that entered the injunction is particularly well suited to decide this issue, especially where the constitutional claim is intertwined with the underlying injunction. *Hayse,* 110 F.3d at 21.

Opinions from the Seventh and Eleventh Circuits reinforce this conclusion. *Hoover v. Wagner,* 47 F.3d 845 (7th Cir.1995), involved a challenge to a state injunction against abortion protesting almost identical to the one at issue here. Chief Judge Posner, writing for the panel, dismissed the case for want of equity. He characterized the plaintiff's request for declaratory and injunctive relief against a state judge and a local police chief as "an insult to the judicial and law enforcement officials of Wisconsin, an interference with an ongoing state court proceeding, and an empty but potentially mischievous command to these officials to avoid committing any errors in the enforcement of the injunction." *Id.* at 851. The court held that it would be an abuse of discretion for a federal district court to enjoin the enforcement of a state court injunction or to declare it unconstitutional in light of the principles of comity that animate our federalist judicial system. *Id.* The Eleventh Circuit recently followed *Hoover's* reasoning in a constitutional challenge to a similar permanent injunction. In *McKusick v. City of Melbourne, Fla.,* 96 F.3d 478 (11th Cir.1996), Judge Carnes concluded that granting declaratory and injunctive relief against such injunctions would pave the way for an endless succession of federal lawsuits. "This arrangement would thrust the federal court into an unseemly, repetitive, quasi-systematic, supervisory role over administration of the state court injunction, and it 'would disrupt the normal course of proceedings in the state courts via resort to the federal suit for determination of the claim *ab initio.'"* *Id.* at 488 (quoting *O'Shea v. Littleton,* 414 U.S. 488, 501, 94 S.Ct. 669, 678–79, 38 L.Ed.2d 674 (1974)).

Although the Seventh and Eleventh Circuits determined abstention is proper in these situations, both *Hoover* and *McKusick* recognized that a nonparty to a state court injunction who is wrongfully arrested for exercising his or her First Amendment rights would still have access to a number of federal remedies. *Hoover,* 47 F.3d at 851; *McKusick,* 96 F.3d at 489. A federal forum could protect such a person pursuant to *Mitchum v. Foster's* exception to the Anti–Injunction Act, *see* 407 U.S. at 242–43, 92 S.Ct. at 2161–63; the exceptions to *Younger* abstention for bad-faith prosecutions, patently unconstitutional laws, and inadequate state forums, *see* 401 U.S. at 53–54, 45, 91 S.Ct. at 754–55, 751; and the exceptions to the preclusion rules when a state court proceeding did not provide a full and fair opportunity to litigate constitutional defenses, *see Migra,* 465 U.S. at 84, 104 S.Ct. at 897–98; *Allen,* 449 U.S. at 95, 101, 101 S.Ct. at 415, 418. These remedies are extremely important to those held in contempt of injunctions restricting political expression, because a contempt defendant generally cannot raise the unconstitutionality of the injunction as a defense in state court. *See Walker v. Birmingham,* 388 U.S. 307, 315–21, 87 S.Ct. 1824, 1829–32, 18 L.Ed.2d

**332**

1210 (1967). However, as the Supreme Court stated in *Walker,* rather than risk arrest and imprisonment, the preferable option for a nonparty who questions the constitutional validity of a state court injunction is to ask the state court for relief from the injunction before disobeying it. *Id.* at 317–19, 87 S.Ct. at 1830–31. When this option was suggested at oral argument, Gottfried's counsel argued that such relief was unavailable to a nonparty challenging an injunction in Ohio. Recent Ohio case law shows otherwise. *See Blair Associates Insurance Agency, Inc. v. Pompora,* No. OT–97–032, slip op. , 1997 WL 669688, at *4 (Ohio Ct.App. Oct. 9, 1997), (observing that an original action in prohibition can be used to challenge an injunction which restricts the free speech of a nonparty). In addition, we assume Gottfried can request general declaratory relief from the injunction pursuant to Ohio Rev. Code §§ 2721.01–.15. *See Rescue Army v. Municipal Court of Los Angeles,* 331 U.S. 549, 574, 67 S.Ct. 1409, 1422–23, 91 L.Ed. 1666 (1947) (observing a declaratory judgment action is "substantially identical" to an action in prohibition to determine constitutionality).

■ Accordingly, we hold that a federal court should abstain when a nonparty to a state court injunction brings a First Amendment challenge to the injunction in federal court before requesting relief from the state court. The scope of the injunction and its continuing necessity under Ohio tort and property law are antecedent to, and the reason for, Gottfried's present complaint. The state court should therefore have the first opportunity to address any significant changes in the law that limit the injunction's proper scope, as it is required to do by Ohio law. *In re Skrha,* 98 Ohio App.3d 487, 648 N.E.2d 908, 914–15 (Ohio Ct.App.1994); *Cleveland v. Ohio Dept. of Mental Health,* 84 Ohio App.3d 769, 618 N.E.2d 244, 246–47 (Ohio Ct.App.1992). Abstention is the proper course here because the state court, unlike the federal court, can modify its injunction or narrowly construe it in light of any intervening legal developments. Giving the state court the first opportunity to reassess the injunction in light of the Supreme Court's recent decisions in *Frisby v. Schultz,* 487

U.S. 474, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988),*Madsen v. Women's Health Center, Inc.,* 512 U.S. 753, 114 S.Ct. 2516, 129 L.Ed.2d 593 (1994), and *Schenck v. Pro-Choice Network of Western New York,* 519 U.S. 357, 117 S.Ct. 855, 137 L.Ed.2d 1 (1997), is the most efficient way to decide this case. It prevents parallel challenges to the same injunction from occurring, with the possibility of inconsistent judgments from the state and federal court. *Compare Cheffer,* 6 F.3d at 712 (striking injunction unconstitutional), *with Operation Rescue v. Women's Health Center,* 626 So.2d 664, 675–76 (Fla.1993) (upholding the same injunction), *aff'd in part and rev'd in part by Madsen,* 512 U.S. 753, 114 S.Ct. 2516; *compare Henry v. First Nat'l Bank of Clarksdale,* 595 F.2d 291, 302–03 (5th Cir.1979) (finding injunction unconstitutional), *with NAACP v. Claiborne Hardware Co.,* 393 So.2d 1290, 1300–02 (Miss. 1981) (upholding the same injunction), *rev'd,* 458 U.S. 886, 102 S.Ct. 3409, 73 L.Ed.2d 1215 (1982). It could also obviate the need for a federal court to decide whether some or all of the injunction is unconstitutional. *See Rescue Army,* 331 U.S. at 568–75, 67 S.Ct. at 1419–23. Furthermore, abstaining under these circumstance affords the Ohio courts the respect they are due as our equals in a federalist judicial system. *See Juidice v. Vail,* 430 U.S. 327, 335–36, 97 S.Ct. 1211, 1217–18, 51 L.Ed.2d 376 (1977); *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 603–04, 95 S.Ct. 1200, 1207–08, 43 L.Ed.2d 482 (1975). We have no reason to believe the Ohio courts are less qualified than we are to fairly address Gottfried's complaints under state and federal law. *Hayse,* 110 F.3d at 21; *see also Harrison,* 360 U.S. at 178, 79 S.Ct. at 1031 (refusing to assume that state courts "will not do their full duty in judging [state enactments] in light of state and federal constitutional requirements"); *Hughes v. Lipscher,* 906 F.2d 961, 967 (3d Cir.1990) (reaching the same conclusion after abstaining from a constitutional challenge to a state court administrative policy).

■ Although Gottfried properly invoked federal jurisdiction in this case, she should give the Court of Common Pleas in Summit County, Ohio the first opportunity to address her complaints. Because there is not a direct appeal raising the same constitution-

al issue currently pending in the state courts, as there was in *Hoover*, the District Court should have stayed, not dismissed, Gottfried's lawsuit pending the state court's assessment of the injunction. *Growe v. Emison*, 507 U.S. 25, 32 & n. 1, 113 S.Ct. 1075, 1080 & n. 1, 122 L.Ed.2d 388 (1993). Of course, abstention in this case "does not ... involve the abdication of federal jurisdiction, but only the postponement of its exercise." *England v. Louisiana Bd. of Medical Examiners*, 375 U.S. 411, 416, 84 S.Ct. 461, 465, 11 L.Ed.2d 440 (1964). Gottfried will have two options once she presents her claims to the state court. If she freely and without reservation presents her constitutional concerns to the state court, litigates them there, and has them decided there, then she will forego her right to return to federal court; her only relief will be from the Ohio appellate courts and in review by the United States Supreme Court on certiorari. *Id.* at 419, 84 S.Ct. at 466–67. Her other option will be to notify the state court of her constitutional objections but to explicitly reserve federal jurisdiction over them should the state court decide that the injunction proscribes her actions. *Migra*, 465 U.S. at 85 n. 7, 104 S.Ct. at 898 n. 7; *England*, 375 U.S. at 421, 84 S.Ct. at 467–68; *Government & Civic Employees Organizing Comm., CIO v. Windsor*, 353 U.S. 364, 366–67, 77 S.Ct. 838, 839, 1 L.Ed.2d 894 (1957). This latter option will protect her from the preclusive effects of the state proceeding, allowing her to return to federal court for determination of the merits of her constitutional claim after she exhausts her remedies in the state courts. *See England*, 375 U.S. at 416–17, 84 S.Ct. at 465–66.

The state court responsible for the injunction is familiar with local conditions and transportation patterns and is in a better position to accommodate Gottfried's constitutional rights through modification or narrow construction of its injunction. This result is more effective and less contentious than asking a federal court to enjoin a state court or to declare its injunctions unconstitutional. Even when there are no jurisdictional bars to such extraordinary relief, a federal court should initially abstain and give due respect to the state court's ability to determine the scope of its injunctions within the constitu-

tional framework. A state court, like a federal court, has a broad duty to avoid serious constitutional issues by interpreting the legal text at issue. We believe this result best accommodates our twin responsibilities of deferring unnecessary constitutional decisions and preventing avoidable conflict between the state and federal courts. The "scrupulous regard for the rightful independence of the state governments" that Justice Frankfurter urged in *Pullman* is all the more warranted now, a half-century later, given that state courts are equal to the task under our Constitution. *See Pullman*, 312 U.S. at 501, 61 S.Ct. at 645–46; *Robb v. Connolly*, 111 U.S. 624, 637, 4 S.Ct. 544, 551, 28 L.Ed. 542 (1884) ("Upon the state courts, equally with the courts of the Union, rests the obligation to guard, enforce, and protect every right granted or secured by the constitution of the United States ...; for the judges of the state courts are required to take an oath to support that constitution, and they are bound by it, and the laws of the United States made in pursuance thereof ... as the supreme law of the land, 'anything in the constitution or laws of any state to the contrary notwithstanding.' ").

For these reasons, we affirm the District Court's decision to abstain, but remand with instructions to reinstate Gottfried's action and stay any further proceedings pending resolution in the state courts.