interest in enforcing it, would impugn the very principles stated above.

## VI.  Conclusion

The decision of the district court is VACATED and the case is REMANDED to the district court with the direction to DISMISS it as MOOT.  *See United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950).

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2002 FED App. 0052P (6th Cir.)
File Name:  02a0052p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

HOLLY GOTTFRIED,
        *Plaintiff-Appellant,*

        *v.*

MEDICAL PLANNING
SERVICES, INC.; THE OFFICES
OF DR. MANOHAR LAL, M.D.;
DR. LAL; SUMMIT COUNTY
SHERIFF DREW ALEXANDER;
JUDGE JANE BOND,
        *Defendants-Appellees.*

No. 00-3488

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No.  95-01569—David D. Dowd, Jr., District Judge.

Argued:  September 12, 2001

Decided and Filed:  February 8, 2002

Before:  DAUGHTREY and GILMAN, Circuit Judges;
COHN, Senior District Judge.[*]

---

**COUNSEL**

**ARGUED:**  Patrick J. Perotti, DWORKEN & BERNSTEIN CO., LPA, Painesville, Ohio, for Appellant.  Karen Kelly Grasso, THOMPSON HINE LLP, Cleveland, Ohio, for Appellees.  **ON BRIEF:**  Patrick J. Perotti, DWORKEN & BERNSTEIN, Painesville, Ohio, for Appellant. Karen Kelly Grasso, Robert M. Gippin, THOMPSON HINE LLP, Cleveland, Ohio, Allyson Miller Leonard, William T. Pivik, SUMMIT COUNTY PROSECUTOR'S OFFICE, Akron, Ohio, John P. Quinn, Akron, Ohio, for Appellees.

---

**OPINION**

---

COHN, Senior District Judge.

## I.  Introduction

Plaintiff-Appellant Holly Gottfried (Gottfried) appeals from the district court's decision finding that a state court injunction restricting abortion clinic picketing obtained by defendants-appellees Medical Planning Services, Inc., the Offices of Dr. Manohar Lal, M.D. and Dr. Lal, individually, (the Medical Planning defendants) on August 7, 1986 against Tri-County Christian Community of Greater Ohio and others, none of whom objected to entry of the injunction, does not violate Gottfried's First Amendment rights. The injunction at issue was vacated on January 10, 2000 on the motion of Medical Planning during the pendency of Gottfried's case in

---

[*]  The Honorable Avern Cohn, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

Additionally, it is clear that this case does not fall into the "capable of repetition, yet evading review" exception to mootness, as the very state court injunction being challenged is legally defunct and there is no evidence in the record that it can or will ever be revived, and Gottfried has not argued otherwise.

Although the mootness issue was raised below, the district court refrained from deciding the issue by stating that the prior panel opinion contemplated that Gottfried would be entitled to a ruling on the merits of her claim.  The district court's reliance on the prior panel's statement was erroneous; it was made at a time when the state court injunction was still in place.  Moreover, the district court's belief that even though the state court injunction was dissolved, "the legal questions remain" is equally unsound.  Whenever a case becomes moot, the underlying legal questions always remain unresolved.  That fact does not provide a justification for reaching the merits of a dispute, but rather demonstrates the inevitable consequences of application of the mootness doctrine.

### B.

In addition to finding Gottfried's claims moot, we are also mindful of the same principles that in part caused the prior panel to decline consideration of Gottfried's constitutional claim.  As the prior panel noted, "we believe equity, comity, and our federalist judicial system require the federal court to give the state judge the first chance to bring the injunction into compliance with constitutional law." *Gottfried*, 142 F.3d at 300.  Here, the Ohio Supreme Court did not reach Gottfried's constitutional claim because Gottfried elected to reserve them for the federal court. However, when presented with the Medical Planning defendants's request, the state court judge vacated the injunction, thereby removing any alleged constitutional infirmities.  For the federal courts to rule on the constitutionality of a defunct state court injunction in a circumstance where the state of Ohio no longer has any

Permanent Injunction and to actively enforce compliance with its terms; and the Sheriff is directed to bring before the Court any person who, having notice of this Permanent Injunction, refuses to obey it, or who obstructs or interferes with the Sheriff in the discharge of his duties.

Sheriff Alexander's obligations under the state court injunction clearly flow from the State. He did not have any discretionary authority regarding the state court injunction. Rather, he was bound to enforce it by its terms and there is no evidence that it was ever enforced otherwise. As such, any action taken in connection with the injunction would be action taken as an arm of the State for which Sheriff Alexander would be entitled to Eleventh Amendment immunity. Indeed, at some point during the life of the state court injunction, the then Sergeant of Summit County, Sergeant McCutcheon, gave notice of the state court injunction to individuals picketing at the OB/GYN Clinic and told them that they would be charged with contempt if they refused to disperse as directed by the injunction. When the individuals refused, they were charged and found guilty of contempt. *See Medical Planning Serv., Inc. v. Tri-County Christian Comm. Of Greater Akron*, 1992 WL 112583 (Oh. App. 9 Dist. May 20, 1992) (unpublished). Sergeant McCutcheon's actions were clearly taken as an arm of the State.

Moreover, Gottfried's complaint simply states that all of the defendants's actions were taken "under color of law and presence of statutes, ordinances, regulations, customs, and uses of the State of Ohio, the City of Akron, and the County of Summit." Gottfried does not allege what entity had a "policy" or "custom" of violating her rights. Indeed, it is the state court injunction that allegedly caused her injury, not any "policy" or "custom" of the state, city or county, and the Sheriff acted as an arm of the state in enforcing it. Overall, we find that Gottfried's purported damage claim is not viable under the circumstances of this case and is insufficient to withstand application of the mootness doctrine.

the district court. Gottfried argues that the injunction, to which Gottfried was not a party, violated the First Amendment. Defendants-Appellees Summit County Sheriff Drew Alexander,[1] and Judge Jane Bond, Summit County Judge for the Court of Common Pleas[2] (the Summit County defendants) argue that the dissolution of the state court injunction rendered Gottfried's claim moot.

At the panel's request, all parties were directed to brief the question of mootness. For the reasons which follow, we find the fact that the state court injunction has been dissolved renders this case moot. Although Gottfried argues that the case is not moot because she is entitled to damages from the time of filing her complaint until the time the injunction was dissolved, her damage claim is unsupportable and does not save the case from mootness. Addressing the merits of Gottfried's constitutional claims under the circumstances would effectively result in an advisory opinion.

## II. Background

This case has an extensive factual background and procedural history, part of which is described as follows in a prior panel opinion, following the initial decision by the district court:

In 1985, Dr. Manohar Lal, his OB/GYN office, and his abortion clinic, Medical Planning Services, sued for and obtained a permanent injunction against the protest activities of certain anti-abortion organizations and two "Does." Judge James P. Winter of the Court of Common Pleas in Summit County, Ohio entered a permanent injunction on August 7, 1986. That injunction applies to the named and unnamed defendants, those acting in

---

[1] Sheriff Drew Alexander is the elected successor to Sheriff Richard Warren.

[2] Judge Bond is the successor to Court of Common Pleas Judge James P. Winter, the judge who entered the injunction.

concert with them, and all other persons who have notice of the injunction. In pertinent part, it prohibits anyone from picketing at Dr. Lal's home and his OB/GYN office; it protects the doorways and driveways at Dr. Lal's clinic; it forbids "mass picketing or any other type of picketing ... which directly or indirectly interferes" with the business of the clinic; and it prevents more than four people from picketing on each of the sidewalks in front of and alongside the clinic. Because the parties consented to this injunction, it was not appealed.

Holly Gottfried was not a party to the state lawsuit supporting the injunction. She was only ten years old when it was entered. An anti-abortion activist, Gottfried wants to picket and distribute information at Dr. Lal's home, office, and clinic, but she fears she will be arrested if she does. On July 20, 1995, she filed this suit in federal court against Dr. Lal, his office, his clinic, the City of Akron, Akron Police Chief Larry Givens, Summit County, Summit County Sheriff Richard Warren, and Judge Jane Bond, the successor to Judge Winter on the Summit County Court of Common Pleas. Through 42 U.S.C. § 1983, Gottfried asserted violations of her constitutional rights of free speech, free press, peaceful assembly, association, free exercise of religion, due process, and equal protection under the United States and Ohio Constitutions. She asked the District Court to declare the injunction unconstitutional on its face or as applied and to enjoin the defendants from enforcing the challenged portions of the injunction against her. She also requested $200,000 in damages in addition to her costs and attorney's fees.

Dr. Lal, his office, and Medical Planning Services moved to dismiss Gottfried's complaint under the Anti-Injunction Act, Colorado River abstention, and the *Rooker-Feldman* doctrine. The district court initially granted this motion without a hearing. Characterizing the case as presenting "an issue of federal-state comity that appears unique in its factual setting," the court

*v. LaHue*, 460 U.S. 325, 334 (1983); *Pierson v. Ray*, 386 U.S. 547, 554 (1967)).

Gottfried's damage claim against Sheriff Alexander bears closer inspection. Although it is well established that states and state officers acting in their official capacities are immune from suits for damages in federal court, *see Edleman v. Jordan*, 415 U.S. 651 (1974); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989), the Eleventh Amendment "does not extend to counties and similar municipalities." *Mt Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977). Here, Ohio law classifies sheriffs as county officials. *See* Ohio Rev. Code Ann. § 301.28(3) (2001) (defining "county elected official" to include "county sheriff."). Because Sheriff Alexander is being sued in his official capacity, he would be liable to the same extent as a municipality (presumably Summit County) under § 1983. However, if Sheriff Alexander was acting not as a *county* official, but as a *state* official, he is entitled to Eleventh Amendment immunity. "Where county officials are sued simply for complying with state mandates that afford no discretion, they act as an arm of the State." *Brotherton v. Cleveland*, 173 F.3d 552, 566 (6th Cir. 1999)(citations omitted). *See also Scott v. O'Grady*, 975 F.2d 366, 371 (7th Cir. 1992)(holding that county official acted as arm of the State where official merely executed writ pursuant to state non-discretionary duty), *cert. denied*, 508 U.S. 942 (1993); *Echols v. Parker*, 909 F.2d 795, 801 (5th Cir. 1990) (finding that local officials acted as State agents when they enforced a State anti-boycott statute by prosecuting boycotters, stating: "[a] county official pursues his duty as a state agent when he is enforcing state law or policy.").

Sheriff Alexander was obligated to enforce the state court injunction as follows:

It is FURTHER ORDERED, ADJUDGED and DECREED that the Sheriff of Summit County proceed forthwith to serve the Defendant[s] and those acting in concert with them, with notice of the terms of this

from each defendant, nominal damages are also available in actions claiming a violation of constitutionally protected rights. *Carey v. Piphus*, 435 U.S. 247, 266-67 (1978). However, a claim for damages must not be "so insubstantial or so clearly foreclosed by prior decisions that th[e] case may not proceed." *Memphis Light, Gas and Water Division v. Craft*, 436 U.S. 1, 9 (1978).

The key question therefore is whether Gottfried has a *viable* claim for damages. She does not. To begin with, any award of damages to Gottfried under § 1983 would have to be assessed against only the Summit County defendants because we are not satisfied that the Medical Planning defendants are state actors.[6] Although Gottfried appears to argue that they are state actors because they somehow actively enforced the injunction by calling the Sheriff, we conclude otherwise. The state court injunction specifically stated that the Sheriff of Summit County has such an obligation - the fact that the Medical Planning defendants placed a phone call when picketers appeared does not render them state actors. Moreover, we do not find the fact that the Medical Planning defendants initiated state court proceedings to obtain an injunction to be state action. Nor has Gottfried alleged that the Medical Planning defendants petitioned the state courts in bad faith or with knowledge that obtaining an injunction would be unconstitutional. *See Louisville Ara Inter-Faith Committee for United Farm Workers v. Nottingham Liquors, Ltd.*, 542 F.2d 652, 655 (6th Cir. 1976) and cases cited therein.

As to the Summit County defendants, it is clear that Gottfried has no claim against Judge Bond. "The Supreme Court has specifically held that state judges are absolutely immune from liability under 42 U.S.C.A. § 1983." *Barrett v. Harrington*, 130 F.3d 246, 254 (6th Cir. 1997) (citing *Briscoe*

---

[6] This issue apparently was raised in the district court, but the district court declined to consider it in light of its ruling that the state court injunction was constitutional.

determined that the Anti-Injunction Act, Colorado River abstention, and *Rooker-Feldman* did not bar Gottfried's federal suit. Nonetheless the court dismissed her case, reasoning that "if a non-party to a consent decree has standing to challenge a state court consent decree in an action brought pursuant to 42 U.S.C. § 1983, then actions in state court which are concluded by the entry of a consent decree will be of scant value and the concepts of comity between the federal and state courts will suffer." Gottfried then filed for postjudgment relief. The court reinstated her complaint and scheduled an evidentiary hearing, specifically reserving the jurisdictional issue. After the hearing, the court again dismissed the case "in the interest of state-federal comity" without ruling on the constitutionality of the injunction. . . .

*Gottfried v. Medical Planning*, 142 F.3d 326, 328 (6th Cir. 1998).

Although not mentioned in the prior panel opinion, the district court held a two-day bench trial and made extensive findings of fact that were not challenged on the first appeal. They are set forth in the district court's Memorandum Opinion of December 20, 1996 and relate to the parties, prior state court proceedings, the parties' positions, picketing activity prior to and after the state court injunction, and Dr. Lal's OB/GYN practice. There are also findings as to Gottfried, including the initiation of Gottfried's case.

As noted above, Gottfried appealed the district court's decision to abstain from ruling on the constitutionality of the injunction. A panel of this court affirmed the district court's decision to abstain but remanded the case "with instructions to reinstate Gottfried's action and stay any further proceedings pending resolution in the state courts." *Id*. at 333. The panel also noted that its decision left Gottfried with two options in state court:

. . . . If she freely and without reservation presents her constitutional concerns to the state court, litigates them there, and has them decided there, then she will forego

her right to return to federal court; her only relief will be from the Ohio appellate courts and in review by the United States Supreme Court on certiorari. *Id.* at 419, 84 S.Ct. at 466-67.  Her other option will be to notify the state court of her constitutional objections but to explicitly reserve federal jurisdiction over them should the state court decide that the injunction proscribes her actions. *Migra*, 465 U.S. at 85 n. 7, 104 S.Ct. at 898 n. 7; *England*, 375 U.S. at 421, 84 S.Ct. at 467-68; *Government & Civic Employees Organizing Comm., CIO v. Windsor*, 353 U.S. 364, 366-67, 77 S.Ct. 838, 839, 1 L.Ed.2d 894 (1957).  This latter option will protect her from the preclusive effects of the state proceeding, allowing her to return to federal court for determination of the merits of her constitutional claim after she exhausts her remedies in the state courts. *See England*, 375 U.S. at 416-17, 84 S.Ct. at 465-66.

*Id*.

Gottfried chose the latter option and returned to state court by filing an action in prohibition[3] with the Ohio Supreme Court, which was denied.

---

[3]Under Ohio law, a writ of prohibition is considered an extraordinary remedy which will be issued to prohibit the exercise of judicial power only when a trial judge lacks either personal or subject matter jurisdiction in a case. *See, e.g., Goldstein v. Christiansen*, 70 Ohio St. 3d 232, 235 (1994).  The Supreme Court of Ohio has indicated that the writ will lie only when the relator can demonstrate: (1) the trial judge intends to exercise judicial power; (2) the proposed use of power is not authorized under the law; and (3) the denial of the writ will cause an injury for which the relator has no adequate remedy at law.  *State ex rel. Kaylor v. Bruening*, 80 Ohio St. 3d 142, 144 (1997).

*Official English v. Arizona*, 520 U.S. 43, 67, n.22 (1997) (citing *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (quoting Monaghan, *Constitutional Adjudication: The Who and When*, 82 Yale L.J. 1363, 1384 (1973))).  A case is moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome. *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1978).  "The mootness inquiry must be made at every stage of a case; thus, if a case becomes moot during an appeal, the judgment below must be vacated and the case remanded with instructions to dismiss." *McPeherson v. Michigan High Sch. Athletic Ass'n*, 119 F.3d 453, 458 (6th Cir. 1997).  When a case becomes moot on appeal, an Article III case or controversy no longer exists, and the courts are without jurisdiction to consider the merits of the appeal. *Honig v. Doe*, 484 U.S. 305, 317 (1988).  "In analyzing issues of mootness it is helpful to keep in mind that '"[t]hese problems often require a highly individualistic, and usually intuitive, appraisal of the facts of each case.'" *McPherson*, 119 F.3d at 465 (Moore, J., dissenting) (quoting 13A Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, Federal Practice and Procedure § 3533, at 211-12 (2d ed. 1984)).

2.

Gottfried concedes that her claim for injunctive relief is moot, but argues that the case itself is not moot because her claim for damages under 42 U.S.C. § 1983 continues. Gottfried primarily relies the following statement in *Buckhannon Bd. and Health Care Home, Inc. v. West Virginia Dept. of Health & Human Serv.*, 121 S. Ct. 1835 (2001), in which the Supreme Court said: "so long as the plaintiff has a cause of action for damages, a defendant's change in conduct will not moot the case."  121 S. Ct. at 1842.  Indeed, where a claim for injunctive relief is moot, relief in the form of damages for a past constitutional violation is not affected. *See University of Texas v. Camenis*, 451 U.S. 390, 393-94 (1980); *Powell v. McCormack*, 395 U.S. 486, 495-500 (1969). Moreover, while Gottfried specifically sought compensatory damages and punitive damages in the amount of $200,000

burdens no more speech than necessary to accomplish a legitimate goal?

The Summit County defendants present the following issues:

Are the Summit County Sheriff and Judge Jane Bond essentially nominal defendants in the enforcement of a consent state court Order?

After a state court consent Order is dissolved, is the federal cause of action based on its enforcement rendered moot?

Following receipt of the parties' briefs, the panel requested additional briefing on the mootness issue. Upon review of the record, we find the issue on appeal to be as follows:

Is the case moot where the state court injunction at issue has been dissolved and where plaintiff does not have a viable claim for damages against any of the defendants?

We answer this question in the affirmative.

### IV.  Standard of Review

Legal questions are reviewed *de novo*; findings of fact are reviewed for clear error.  *See Pinette v. Capital Square Review and Advisory Board*, 30 F.3d 675, 677 (6th Cir. 1994).

### V.  Analysis

#### A.

#### 1.

Mootness has been described as "'the doctrine of standing set in a time frame:  The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'"  *Arizonans for*

Thereafter, in 1999, Gottfried returned to district court again raising her constitutional claims.[4]  On December 21, 1999, the district court entered an order requesting the parties to brief eight issues regarding the merits of Gottfried's constitutional claim, including her entitlement to damages by January 10, 2000.  *See* district court's order of December 21, 1999.  Defendants-Appellees requested, and were granted, additional briefing time because they were seeking to have the state court injunction dissolved.  In fact, Medical Planning returned to the Court of Common Pleas of Summit County, Ohio and moved to dissolve the injunction.  Apparently, Dr. Lal, the physician who performed abortions at the clinic, had retired from the active practice of medicine and had not performed any abortions at the clinic since late 1998.  On January 10, 2000, the Summit County Court of Common Pleas dissolved the injunction.

In its Memorandum Opinion of March 6, 2000, the district court framed the issue for decision as "whether the challenged portions of the state court injunction in effect from August 7, 1986 to January 10, 2000, violated plaintiff Holly Gottfried's First Amendment rights, and if so, whether these defendants are liable."  The district court then repeated its extensive findings of fact originally set forth in its December 20, 1996 Memorandum Opinion, which included the following under the heading "Positions of the Parties:"

12.  Plaintiff Holly Gottfried is opposed to abortion and has stated that she desires and intends to peacefully picket and distribute literature about abortion alternatives on the public walkways and sidewalks adjacent to the MPA Medical Clinic, the OB/GYN Officer and Dr. Lal's home.

---

[4]The parties briefed the issue of whether Gottfried meaningfully complied with this court's order of remand by filing an action in prohibition with Ohio's Supreme Court. The district court concluded that she had, as Gottfried made it clear she was not waving her federal claims. This issue is not on appeal.

13. The Medical Planning defendants or their employees and agents intend to enforce and will enforce the State Court Order.
14. The Summit County Sheriff is required, by terms of the State Court Order, to actively enforce it.
15. The Sheriff has enforced the State Court Order since it was entered, but the Sheriff does not specifically monitor or patrol the locations which are the subject of the State Court Order. The only times that the Sheriff has acted to enforce the State Court Order is when contacted by the Medical Planning Defendants or their representatives.

The district court did, however, acknowledge that the dissolution of the state court injunction raised the issue of mootness, but determined that Gottfried was entitled to a ruling on the merits. The district court explained:

The state court injunction was vacated on January 10, 2000. It, therefore, has no more effect and no ability to preclude plaintiff from the actions she wishes to take. Plaintiff, however, maintains that she is entitled to the declaratory and injunctive relief she originally sought, and to damages and attorney fees, because her First Amendment rights were violated from at least the time of filing this lawsuit until the setting aside of the state court injunction. Defendants, Medical Planning Services, Inc., Offices of Dr. Manohar Lal, M.D., and Dr. Manohar Lal himself, appear to take the position that the matter has either been rendered moot or cannot be pursued against them under Section 1983 because they are not state actors.[5]

---

[5] In a footnote, the district court stated that "[t]he other defendants, Summit County Sheriff Richard Warren and Judge Jane Bond, have not taken a position. They, however appear to be practically nominal defendants, named not because of any personal actions on their parts but only because of their official roles in relations to the now-defunct state court injunction."

This Court is of the view that plaintiff is entitled to a ruling. In fact, this is what was contemplated by the Court of Appeals when it indicated that Gottfried would be allowed "to return to federal court for determination of the merits of her constitutional claim after she exhausts her remedies in the state courts. *Gottfried v. Medical Planning Services, Inc.*, 142 F.3d at 333.

While the state court injunction was still in place, there were thorny legal issues which this Court wanted the parties to brief. However, now that the injunction is out of the picture, the legal questions that remain can be resolved without further briefing as the Court has already made extensive findings of fact, see Doc. No. 98, which were not challenged during the original appeal.

Accordingly, the district court went on to address the merits of Gottfried's claim, ultimately concluding that the state court injunction was content neutral and did not impose an unnecessary burden on Gottfried's First Amendment rights.

### III. Issues on Appeal

Gottfried presents the following issues on appeal:

Does the First Amendment allow a State Court injunction to bar peaceful, lawful speech by the general public on public sidewalks?

Does the First Amendment allow the general public to be banned from peacefully conveying a message about abortion alternatives on the public sidewalks adjacent to Dr. Lal's OB/GYN office because the District Court holds that the message will cause "injury"?

The Medical Planning defendants present the issue as follows:

Does a state court have the authority to enter an injunction that establishes limits on picketing activity, in light of the particular factual circumstances, and which